Curtis C. SEXTON, Grover C. Bates and
Waste Management, Inc., of Tennessee,
Plaintiffs-Appellees,

v.

ANDERSON COUNTY, acting By and
Through the BOARD OF ZONING
APPEALS, Defendant-Appellant.

Court of Appeals of Tennessee,
Eastern Section.

March 28, 1979.

Rehearing by Supreme Court Denied
Aug. 27, 1979.

Certiorari Denied by Supreme Court
Aug. 13, 1979.

Mike Lawson, Anderson County Atty.,
Clinton, for defendant-appellant.

P. Douglas Morrison of Morrison, Morrison & Morrow, P.A., Knoxville, for Waste
Management, Inc.

OPINION

FRANKS, Judge.

The appellant denied appellees' request to
develop a sanitary landfill on a tract of land
in Anderson County. The Chancellor reversed that determination, finding that all
of the requirements for granting a special

exception to develop a landfill were met by the appellees and there was no material evidence in the record to sustain the denial.

Appellant appealed and assigns four errors, which may be combined for consideration, and asserts there is material evidence in the record to sustain the board and appellees did not show compliance with the zoning ordinance by obtaining prior approval of public health bodies and setting forth the percentage of land to be used as a fill, as required by the ordinance.

The tract of land in question is presently zoned A–2, an Anderson County zoning classification, and utilized as a pasture. The zoning ordinance provides, in pertinent parts:

7.5. *A–2 Rural Residential District.*

A. *District Description:*

This district is intended to be utilized in areas where, due to remoteness, impermeability or shallowness of soils, the absence of the necessary urban services, or the continuation of farming or agricultural activities, development of a suburban density is undesirable or infeasible. Although the A–2 District is primarily a rural district, it also provides for low-density residential development, with lot sizes for single-family dwellings and mobile home structures being less restrictive than those of the A–1 Agriculture-Forestry District. In addition, a primary objective of the A–2 District is to prevent undesirable urban sprawl and to exclude land uses which demand a level of urban services which are impossible or uneconomical to provide. The following regulations shall apply in the A–2 Rural Residen-

tial District as defined on the *Zoning Map of Anderson County, Tennessee.*

\* \* \* \* \* \*

C. *Special Exceptions:*

In the A–2 Rural-Residential District, the following uses and their accessory uses may be permitted subject to review and approval by the Anderson County Board of Zoning Appeals in Accordance with the provisions of Article 1, Section 11.5. . . .

6. Sanitary landfill operations, subject to the approval of the Anderson County Health Department and the Tennessee Department of Public Health.

\* \* \* \* \* \*

11.5. *Procedure for Authorizing Special Exceptions.*

The following procedure is established to provide a means for review of a proposed use by the Board of Zoning Appeals. The procedure shall be the same whether review is required by this ordinance or whether a review is requested by the Zoning Officer to determine whether a proposed use is potentially dangerous, noxious, or offensive.

Appellees petitioned the Board of Zoning Appeals for a special exception to allow the operation of a sanitary landfill. The board conducted a public hearing, which was informal, and the procedure followed was, to some extent, irregular.[1] Immediately following the hearing, the board voted three to one to deny the petition.

Appellant initially argues that the sanitary landfill would "likely be injurious to the public health and safety of the surrounding community," and would be detrimental to the character of the neighborhood

---

1. The Board of Zoning Appeals of Anderson County is a quasi-judicial body charged with finding facts and is required to conduct an orderly proceeding appropriate to the case. *See Reddoch v. Smith,* 214 Tenn. 213, 379 S.W.2d 641 (1964). At the hearing, there were attorneys present representing different interests but cross-examination of witnesses was virtually non-existent. Apparently, none of the witnesses was administered an oath, which is mandatory. 2 Am.Jur.2d, *Administrative Law,*

§ 423. According to the Chancellor's memorandum, all parties stipulated that the transcript of the proceeding be treated as evidence.

While a hearing where all interested parties are given the opportunity to fully express their views is essential, it is not a function of the board to conduct a referendum on public attitudes relative to the petition. *City of Apopka v. Orange County,* 299 So.2d 657 (Fla.App. 1974).

and cites *Zoning Law and Practice,* Yokely, 4th Ed. 1978, Section 2–2, pp. 19–20, to the effect that the general purpose of zoning is the preservation of the character of neighborhoods. These insistences were ably met by the Chancellor in his memorandum opinion and we quote at length therefrom with approval:

Article 8.11 [zoning ordinance] states that in every district it shall be unlawful to carry on or permit to be carried on any activity operation or use of any land, building, or equipment to the extent that it is harmful to the general health, safety and welfare.

This performance standard as stated in the ordinance is in the opinion of the Court, not a condition precedent to the granting of a special exception, but is a statement contained within the ordinance prohibiting such activity by an owner or occupier of land.

.    .    .    .    .

The Board of Zoning Appeals is an administrative body as opposed to a legislative body and the Quarterly County Court of Anderson County has previously determined, as hereinbefore stated, that growth of a suburban density is deemed undesirable in this area and that a primary objective of the A–2 District is to prevent undesirable urban sprawl and to exclude land uses which demand a level of urban services which are impossible or uneconomical to provide.

The Quarterly County Court of Anderson County has also expressly provided that in this classification sanitary landfill operations will be permitted, subject to review and approval by the Board of Zoning Appeals and subject to the approval of the Anderson County Health Department and Tennessee Department of Public Health.

It is clear that this property does lie in an A–2 District; that the Anderson County Health Department, Tennessee Department of Public Health, and the staff has approved this area.

While it is true that many residents expressed before the Board of Zoning Appeals their fears about future conditions which might develop, the Zoning Ordinance, Article 8.11, states that it would be unlawful to carry on activity that is harmful to the general health, safety and welfare. By the inclusion of a sanitary landfill as a special exception, obviously the Quarterly County Court did not consider that a landfill per se would be harmful to general health, safety and welfare. If, during the course of operation of a landfill, such conditions develop, a remedy is available to abate such conditions as would be harmful to general health, safety and welfare.

There is evidence relating to the desirability of suburban type development of the tract of land in question and the surrounding area; however, the zoning classification of the area as A–2 pretermits this consideration and the evidence is, therefore, not material to the application for the special exception.

At the hearing before the board, the area property owners voiced fears and objections to the development based upon possible pollution of the water table, offensive odors emanating from the landfill, damage to roads from increased traffic hauling garbage to the site and decrease in property values in the general area.

The evidence established there is no public water supply in the area and the area residents rely upon private wells for water; pollution reaching the water table could create a serious health hazard. Systematic soil samplings were made on the property by borings, ranging in depths from 35 to 50 feet. None of the borings came in contact with the water table and the soil type in the area is "containing" and the evidence established there is little or no danger of groundwater leaching through the refuse and contaminating the water table. No contradictory evidence on this issue was offered.

■ Various members of the community expressed beliefs and opinions that the presence of the landfill would create noxious odors and result in falling property values; they also thought that trucks deliv-

ering refuse to the site of the fill would cause additional damage to the local roads. These statements were offered on the issue of whether the intended use is "potentially dangerous, noxious or offensive." None rises to the dignity of being material evidence on the issue. In each instance, the statements amount to an expression of opinion on the ultimate issue, unsubstantiated by factual premises. Speculations, expression of fears and considerations of an aesthetic or political nature do not form a basis to support a decision made by an administrative body charged with adjudicatory responsibility. *Harvey v. Rhea County Beer Board,* 563 S.W.2d 790 (Tenn.1978); *Ewin v. Richardson,* 217 Tenn. 534, 399 S.W.2d 318 (1966).

The opponents of the landfill attended the public hearing conducted by the board in substantial numbers and voiced strong and sincere beliefs that the operation would have an adverse impact on their community but none of their suggestions was supported by facts. No witness purported to have any knowledge of any odor problems at a landfill, either operated by Waste Management or operated in the same manner as the one proposed. No witness attempted to outline the composition of the roads in question and the effect upon the roads from the increased traffic. On this issue, the Chancellor noted the testimony of a representative of the state planning agency that the site was in close proximity to the Interstate 75–Racoon Valley Intersection and the county could control access to the site by imposing weight limit restrictions on the roads. While most of the people in the area expressed the belief that property around the site would decrease in value, none could point to actual reduction in property values due to the proposed development or decline in property values in areas adjacent to similar operations.

■ In the absence of material evidence on these issues, the expression of fears by members of the community alone, however sincere, will not support the determination of the Board of Zoning Appeals. This court noted in the case of *Pace v. Garbage Disposal District of Washington County,* 54 Tenn.App. 263 at 266–7, 390 S.W.2d 461 at 463 (1965):

Judicial review of the action of administrative bodies is confined to an examination of the evidence to determine whether "there is material evidence to support conclusions that are neither arbitrary nor unlawful." [Citations omitted.]

. . . . .

[T]o sustain the action of an administrative tribunal more than a scintilla or glimmer of evidence is required. It must be of a substantial, material nature. . .

It must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration. Anno. 123 A.L.R. 646; 2 Am.Jur.(2d) 572, Administrative Law, Section 688.

■ There is no material evidence that the proposed landfill would be dangerous, noxious or offensive within the meaning of the ordinance. The evidence presented does establish that the proposed site is suitable from a geologic, hydrologic and soil standpoint and the proposed plans for the landfill were designed to screen the landfill from passing public and the public traversing the interstate.[2] The applicants proposed to do all that is technologically feasible to avoid consequences feared by area residents.

Further, appellant argues that before the Board of Zoning can grant a special exception, the Anderson County Health Department and the Tennessee Department of Public Health must have given their approval and contend that this requirement has not been fulfilled. The evidence establishes the respective health departments had given the necessary approval to enable

2. Where a special exception is granted, the zoning ordinance expressly empowers the board with authority to impose such conditions on the use of the land as it may deem advisable

in the furtherance of the general purposes of the ordinance. Article 11, Section 11.5B, Zoning Ordinance, Anderson County, Tennessee.

the Board of Zoning to proceed with this application.

Finally, the county argues that appellees have not represented what percentage of the parcel of land would be actually used for landfill operation and insist, under the zoning ordinance, no more than 30 percent of the total land area of a parcel of property may be used for non-agricultural purposes. This argument is neither applicable to the law nor the facts within the scope of our review. If the special exception is granted, the developer will be required to abide by any existing regulations and ordinances in the development and operation of the landfill.

While the board did not exceed its jurisdiction, we conclude, in the absence of material evidence on the issues framed by the ordinance establishing a basis for denial, that its decision in denying the special ex-

ception permitted within the framework of the zoning ordinance was arbitrary. *Hoover Motor Express Co. v. Railroad and Public Utilities Commission,* 195 Tenn. 593, 261 S.W.2d 233 (1933); *see also Spunt v. Fowinkle,* 572 S.W.2d 259, 265 (Tenn.App.1978).

For the foregoing reasons, we overrule all assignments of error. The decree of the Chancellor is affirmed and the cause remanded to that Court for execution.

Costs incident to this appeal are taxed against appellant.

SANDERS and GODDARD, JJ., concur.