# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

BURSON & SIMPSON LODGE )
DEVELOPMENTS, INC., )
                 )
        Plaintiff/Appellant, ) Davidson Chancery No. 97-803-III
                 )
VS. ) Appeal No. 01A01-9805-CH-00249
                 )
THE METROPOLITAN GOVERNMENT )
OF NASHVILLE AND DAVIDSON )
COUNTY, and THE METROPOLITAN )
PLANNING COMMISSION, )
                 )
        Defendants/Appellees. )

**FILED**

March 5, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE CLAUDIA BONNYMAN, SPECIAL CHANCELLOR

**GEORGE A. DEAN**
**PARKER LAWRENCE CANTRELL & DEAN**
Nashville, Tennessee
**ROBERT RUTHERFORD**
**RUTHERFORD, DEMARCO & WHITE**
Nashville, Tennessee
Attorneys for Appellant

**THOMAS G. CROSS**
**Metropolitan Attorney**
Nashville, Tennessee
Attorney for Appellees

**REVERSED AND REMANDED**

                                 **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HEWITT P. TOMLIN, JR., Sp. J.**
        Burson & Simpson Lodge Developments, Inc. ("Burson & Simpson") appeals from

the trial court's affirmance of a decision rendered by the Nashville and Davidson County Metropolitan Planning Commission (the "Planning Commission"), whereby the Planning Commission characterized a proposed amendment to a planned unit development as a "basic change in development concept," and whereby the Planning Commission disapproved the amendment. We find that, based upon the record before this Court, the Planning Commission's disapproval of the proposed amendment was illegal, arbitrary, or capricious and, therefore, we reverse the holding of the trial court.

**Facts and Procedural History**

This case involves an approved and partially developed general commercial planned unit development, as contemplated by the zoning ordinance for the Metropolitan Government of Nashville and Davidson County. See Metro. Gov't Zoning Ordinance § 17.100.020(A) (1997). Prior to the adoption of this planned unit development, the subject land was zoned as an "RM8" high-density residential district. As required by the Metropolitan Government's zoning ordinance, the master development plan that received preliminary approval by both the Planning Commission and the Metropolitan Council described "the utilization of structures" and "the land area to be devoted to various uses and activities." See id. § 17.108.070(A)(3), (B). The approved preliminary plan designated the use for each tract of land within the planned unit development as either: (1) retail; (2) fast food; or (3) fast food/office.[1] The particular tract that is the subject of this lawsuit ("tract 5") included 7.3 acres, and was designated for retail use. Moreover, as required by the zoning ordinance, the approved preliminary plan also set forth the approximate height of the retail structure that was to be built on tract 5, being under approximately 20 feet.

In October 1996, Burson & Simpson filed an application with the Planning Commission, seeking to amend the master development plan in order to construct a three-story suburban lodge (motel) on tract 5 in lieu of the retail structure that was set forth in the plan. The height of the proposed motel was to be 39 feet (nearly double the height of the

---

1. Since the approval of the planned unit development, a Kroger store and a Krystal's have been constructed within the development.

building that was set forth in the approved preliminary plan). The Planning Commission heard the matter on December 12, 1996, at which time it adopted a resolution stating that Burson & Simpson's proposed amendment "is given DISAPPROVAL AND REMANDED TO COUNCIL AS AN 'AMENDMENT' . . . ." The resolution further stated, "The Planning Commission determined that the proposed changes in use and building height were not appropriate in this location, and remanded such changes back to the Council as a basic change in development concept for this planned unit development."

No further action was taken on an administrative level. Subsequently, however, Burson & Simpson filed a petition for writ of certiorari in the Davidson County Chancery Court. After the writ was issued, the administrative record was transmitted, and the matter was heard, the trial court entered an order that stated that Burson & Simpson was "not entitled to relief under the writ of certiorari." Accordingly, the trial court's order affirmed the decision of the Planning Commission.

On appeal, Burson & Simpson contends that its proposed amendment amounted to no more than a minor modification of the development plan, and that its proposed amendment should have been approved by the Planning Commission. It presents this Court with the following issue:

> I. Whether there is any basis upon which the Metropolitan Planning Commission could validly deny the application submitted by Burson & Simpson for an amendment to an existing planned unit development?

The Metropolitan Government and the Planning Commission further present this Court the following additional issue:

> II. Should the trial court have dismissed [Burson & Simpson's] claims for failure to exhaust administrative remedies?"

## Analysis

As stated earlier, this case was brought before the trial court by writ of certiorari.

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate

3

remedy.

Tenn. Code Ann. § 27-8-101 (Supp. 1998). Our supreme court has stated the following regarding judicial review pursuant to such writs:

> The courts must determine whether the action of the [administrative body] in the exercise of its administrative, judicial or quasi-judicial function was illegal or in excess of jurisdiction. Tenn. Code Ann. Sec. 27-8-101. If the exercise of authority by the governmental body can be classified as arbitrary or capricious, courts have routinely provided relief.

McCallen v. City of Memphis, 786 S.W.2d 633, 640 (Tenn. 1990). Accordingly, if the Planning Commission's determinations in the instant case were either arbitrary or capricious, Burson & Simpson would be entitled to relief. Our supreme court has also provided the following guidance in reviewing cases such as the instant one:

> [T]he court's primary resolve is to refrain from substituting its judgment for that of the local governmental body. An action will be invalidated only if it constitutes an abuse of discretion. If "any possible reason" exists justifying the action, it will be upheld. . . . [A]dministrative decisions are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action.
> . . . .
> [T]he court should refrain from substituting its judgment for the broad discretionary authority of the local governmental body. An invalidation of the action should take place only when the decision is clearly illegal, arbitrary, or capricious.

Id. at 641-42. Therefore, we must affirm if there exists material evidence in the record to support the Planning Commission's determinations. See Davis Group, Inc. v. Metropolitan Gov't of Nashville and Davidson County, 912 S.W.2d 178, 180 (Tenn. App. 1995).

This case involves two administrative determinations, which were judicial or quasi-judicial in nature, that were made by the Planning Commission. First, the Planning Commission determined that Burson & Simpson's proposed amendment amounted to a basic change in concept or general development policy.[2] Second, the Planning Commission disapproved the proposed amendment, instead of recommending adoption of the amendment which required concurring approval from both the Planning Commission

---

2. One section of the Metropolitan Government's zoning ordinance that governs amendments and changes to adopted preliminary master development plans for planned unit developments provides the following:

> Any proposed amendment which involves a basic change in concept or general development policy in the judgment of the planning commission shall be deemed as an amendment to the preliminary master development plan and the planning commission shall make its recommendation to the metropolitan county council for concurrence.

Metro. Gov't Zoning Ordinance § 17.108.230.

4

and the Metropolitan Council.

We find that the Planning Commission's first determination, that Burson & Simpson's proposed amendment amounted to a basic change in concept or general development policy, was supported by material evidence and was not illegal, arbitrary, or capricious. It is clear from the record that Burson & Simpson's proposed amendment sought to introduce into the planned unit development a use classification that was not contemplated by the approved preliminary plan. As this Court previously implicitly recognized in the unreported case Evans v. Metropolitan Planning Comm'n of Nashville and Davidson County, No. 01A01-9303-CH-00115, 1993 WL 350132 (Tenn. App. Sept. 15, 1993), "substantive amendments impacting such items as the PUD's . . . activity types" require approval from both the Planning Commission and the Metropolitan Council under section 17.108.230 because such amendments involve a basic change in concept or general development policy.

Furthermore, the Planning Commission's first determination, that the proposed amendment amounted to a basic change in concept or general development policy, amounted to a determination under a "catch-all" provision that the proposed amendment would require concurrence by the Metropolitan Council in order to be adopted.[3] Section 17.108.215 of the zoning regulation also sets forth a list of specific instances where proposed amendments require concurrence by the Metropolitan Council for adoption. As explained in the following paragraph, one of these instances is applicable to the instant case and, therefore, we find no error in the Planning Commission's first determination.

In this case, Burson & Simpson sought to introduce a suburban lodge, or motel, into the previously approved general commercial planned unit development. While such a use might, in most instances, be characterized as "transient habitation commercial activities,"[4]

---

3. See supra note 2.

4. "Transient habitation commercial activities include the provision of lodging services to transient guests." Metro. Gov't Zoning Ordinance § 17.12.080(25).

5

Burson & Simpson expressly described its intended use as "semitransient."[5] In fact, it specifically represented to the Planning Commission that its proposed lodge was *not* intended for transient guests, and that its activities would satisfy the definition of "semitransient" under the zoning ordinance. It represented to the Planning Commission, among other things, the following:

> The typical Suburban Lodge does not cater or attract a transient person. The typical site is not located directly adjacent to an exit ramp from the adjacent interstate highway but away from the transient traveler passing through who would hop off the interstate highway just to spend the night and leave the next day.

Under the Metropolitan Government's zoning ordinance, however, such "semitransient" activities are classified as a residential use, and not as a commercial use. Metro. Gov't Zoning Ordinance § 17.12.060. *As presently adopted*, the planned unit development at issue in this case is limited as being a *commercial* planned unit development. The uses that are permitted within a commercial planned unit development, which are specifically listed in the zoning ordinance, do *not* include "semitransient residential activities."[6] See id. § 17.100.060, table 17.100.060. *However*, "the metopolitan planning commission and the metropolitan county council may consider separate types of planned unit developments, such as residential and commercial planned unit development, general, within a consolidated master development plan as a single administrative procedure." Id. § 17.92.080. Moreover, planned unit developments may be amended and changed from one type to another, *i.e.*, from commercial to residential. Id. § 17.108.215(A)(1). Accordingly, Burson & Simpson's proposed amendment essentially seeks the creation of two separate types of planned unit developments within the master development plan that was previously given approval in this case. Such a change, from commercial to residential, requires concurrence by the Metropolitan Council under section 17.108.215 of the zoning ordinance, and, therefore, the Planning Commission's first determination did not amount

---

5. "Semitransient residential activities" is a class of residential activities whereunder "[t]he occupancy of living accommodations [is] partly on a monthly or longer basis and partly for a shorter time period, but with less than thirty percent of the living units . . . being occupied on a less-than-monthly basis." Id. § 17.12.060(C).

6. We find it relevant to note that semitransient residential activities are permitted by right in only three types of commercial districts: multiple residential and office (MRO); office and service parking (OP); and core commercial frame (CF). Metro. Gov't Zoning Ordinance § 17.60.020(A)(2). See also id. §§ 17.56.020, .040, .110. They are *not* permitted by right in other commercial districts, including, for example, limited commercial service (CSL) districts, commercial service (CS) districts, and general commercial (CG) districts. Id. § 17.60.020(A)(2). See also id. §§ 17.56.070, .080, .090.

to reversible error. Because the Planning Commission's first determination was proper, we turn to its second determination, that Burson & Simpson's Amendment should be disapproved.

Regarless of whether a planned unit development is commercial or residential, each activity that is permissible within the development is permitted "only when such activities are deemed appropriate" by the Planning Commission and the Metropolitan Council. Metro. Gov't Zoning Ordinance §§ 17.96.050, 17.100.060. Unlike zoned districts, where specified use classifications and activities are deemed "permitted by right" under the zoning ordinance, the Planning Commission and the Metropolitan Council are afforded discretion in determining whether particular activities are appropriate for a particular planned unit development. As explained earlier, however, the Planning Commission's determination must not be illegal, arbitrary, or capricious. Otherwise, the commission's determination will amount to an abuse of discretion.

In Burson & Simpson's brief, it argues that its amendment should have been approved because its proposed motel for semitransient residential activities satisfies the RM8 zoning that underlies the planned unit development.[7] We find this argument unpersuasive, however. As long as the planned unit development remains approved and is not canceled by the Planning Commission, along with concurrence from the Metropolitan Council, and as long as the subject land area (tract 5) remains within the development,[8] the planned unit development overlays the RM8 zoning on the county's official zoning map. See id. § 17.108.180. Therefore, the underlying RM8 zoning is replaced by the planned unit development, and the Planning Commission was not required to approve the proposed

---

7. Semitransient residential activities are permitted by right in RM8 districts. Metro. Gov't Zoning Ordinance § 17.24.020(A)(3).

8. Land area may be added to or removed from the planned unit development by approval from the Planning Commission, along with concurrence from the Metropolitan Council. Metro. Gov't Zoning Ordinance § 17.108.215(A)(2). In this case, however, Burson & Simpson has not sought the removal of tract 5 from the planned unit development. Leaving tract 5 within a planned unit development while reclassifying it to "semitransient residential activities" provides at least one apparent advantage to Burson & Simpson over outright removal from the planned unit development. While "semitransient residential activities" are ordinarily limited as described in footnote 5 above ("partly on a monthly or longer basis and partly for a shorter period . . . ."), "the proportional limitation of less-than-monthly occupancy *may* be waived" in residential planned unit developments as deemed appropriate by the Planning Commission and the Metropolitan Council, provided that no units are less than one-week occupancy. Id. §§ 17.12.060(C), 17.96.110.

7

amendment based simply upon compliance with RM8 zoning requirements.

During the course of the Planning Commission's hearing, certain concerns were raised relating to how the proposed change would affect neighboring residents. Among those concerns was, "what happens if this business fails and this becomes a transient motel or worse, a place for homeless to congregate." No material evidence, however, was introduced to demonstrate any likelihood that the proposed motel would fail, and "mere beliefs, opinions and fears of neighborhood residents do not constitute material evidence." See Sexton v. Anderson County, 587 S.W.2d 663, 666 (Tenn. App. 1979). Therefore, based upon the record in this case, any expressed fear of business failure did not amount to material evidence sufficient to support the Planning Commission's disapproval.

Review of the transcript from the Planning Commission's hearing reveals that the Planning Commission's disapproval was based primarily upon the proposed height of the motel,[9] which was nearly double the height of the previously approved retail building. Under the specific facts of this case, however, disapproval based upon height was improper. Regardless of whether tract 5 remained a part of a general commercial planned unit development, or whether it was changed, either back to its underlying RM8 classification or to a residential planned unit development tract, the proposed building height was governed by express guidelines already set forth in the zoning ordinance. Among other restrictions, buildings within a general commercial planned unit development cannot exceed a height of 45 feet above the street line. Metro. Gov't Zoning Ordinance §§ 17.64.210, 17.100.080, table 17.64.210. Buildings within the underlying RM8 district cannot exceed three stories in height. Id. § 17.28.370(A). Last, buildings that are part of a residential planned unit development cannot exceed three stories in height. Id. §§ 17.28.370(A), 17.96.180. Burson & Simpson's proposed motel satisfies *any* of these height requirements. Accordingly, because Burson & Simpson's proposed motel complied with the preestablished guidelines governing height that are set forth in the zoning ordinance, and based upon the unique facts of this case, disapproval based upon height

_____

9. Discussion also related to the "unique" topography of the area, but this, again, pertained to how the proposed height related to this "unique" topography.

8

was illegal, arbitrary, or capricious.

We also note that the Planning Commission's disapproval was based, albeit to a lesser degree than height, upon a misapprehension of the procedures governing the "approval" process of Burson & Simpson's proposed amendment. The transcript from the Planning Commission's hearing clearly demonstrates that the Commission believed that, regardless of whether it approved or disapproved Burson & Simpson's proposed amendment, the Metropolitan Council would have the "final say" on whether the amendment was approved and adopted. In fact, the record suggests that it *wanted* the Metropolitan Council again to review the matter and to have the "final say" on the matter. While the Planning Commission's belief would have been true if the Planning Commission had recommended approval of the amendment, the Planning Commission's belief did not apply in this case because the proposed amendment could only have been adopted through *concurring* approval between both the Planning Commission and the Metropolitan Council. Id. §§ 17.108.215, 17.108.220. Therefore, the Planning Commission's reliance upon further action by the Metropolitan Council was arbitrary, since its reliance was premised upon an incorrect conclusion of law.

Last, the Metropolitan Government and the Planning Commission asserted in the trial court that this case should be dismissed for failure to exhaust administrative remedies. Moreover, they have presented this issue to this Court for review. The trial court's memorandum opinion reviewed this issue by stating the following:

> The defendants assert that the plaintiff must secure a decision from the Council in order to exhaust its remedies. Consequently, this Court should dismiss the action for lack of subject matter jurisdiction.
>
> The Court finds that the plaintiff has exhausted its administrative remedies: the code provision regulating amendments to PUDs requires that the MPC send its recommendation regarding the amendment to the Council for "concurrence." COMZO § 17.108.230. Since the MPC recommended against the change applied for by the plaintiff, concurrence here means the plaintiff loses and must file its lawsuit. If there is denial of concurrence, there is no remedy mentioned. The law does not require pursuit of an administrative remedy if it would by a useless effort, as here. Bigger v. Allen, 192 Tenn. 426, 241 S.W.2d 516 (Tenn. 1951).

We concur with the trial court's reasoning and result. Because the Planning Commission

did not approve the proposed amendment, the amendment could not have been adopted, regardless of whether they brought the matter before the Metropolitan Council.

**Conclusion**

Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed against the Metropolitan Government of Nashville and Davidson County and the Metropolitan Planning Commission, for which execution may issue if necessary.

 

_____

_____HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
TOMLIN, Sp. J.