IN THE COURT OF APPEALS OF TENNESSEE

AT NASHVILLE

**FILED**

**September 3, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

WILSON COUNTY YOUTH EMERGENCY ) C/A NO. 01A01-9812-CH-00634
SHELTER, INC.,                 )
                               )
        Plaintiff-Appellant,   )
                               )
                               )
                               )
V.                             ) APPEAL AS OF RIGHT FROM THE
                               ) WILSON COUNTY CHANCERY COURT
                               )
                               )
                               )
                               )
WILSON COUNTY AND WILSON       )
COUNTY BOARD OF ZONING APPEALS,)
                               ) HONORABLE C.K. SMITH,
        Defendants-Appellees.) CHANCELLOR

For Appellant                    For Appellees

RANDLE W. HILL, JR.              MICHAEL R. JENNINGS
Nashville, Tennessee             Lebanon, Tennessee

O P I N I O N

REVERSED AND REMANDED                           Susano, J.

The Wilson County Board of Zoning Appeals ("the BZA") denied the petition of Wilson County Youth Emergency Shelter, Inc. ("the Shelter") for a use on review to construct a group home on 5.46 acres of property in Wilson County. The Shelter proposes to move its existing facility in the county to the new location. On petition for certiorari, the trial court affirmed the action of the BZA. The Shelter appeals, arguing that the BZA's decision was illegal, arbitrary, and beyond its jurisdiction. By way of a separate issue, the Shelter argues that there is no material evidence to support the BZA's denial of its petition.

I. *The Petition*

The Shelter proposes to build a group home as a residence and in-house-schooling facility for up to 12 individuals in an A-1 Zone -- being the Agricultural Zone -- in Wilson County. The home is designed to accommodate up to 12 individuals and two staff members.[1]

Testimony before the BZA reflects that the residents are, and will continue to be, children between the ages of 12 and 18. Some are abused and neglected, while others have been unruly at home. The home is described as a level-one facility -- "not a lock-down facility." Some of the inhabitants have been guilty of "passive delinquen[cy] charges," such as burglary and minor larceny, while some have "drug issues." The home does not take

---

[1] The Shelter offered testimony that more than two staff members would sometimes be at the home.

children who have been guilty of violent crimes.

The majority of the children come from the Department of Children Services under a contract with the state. Approximately 25% of the residents are from Wilson County. The average stay is approximately 27 days. In 1996, the existing facility in Wilson County serviced 162 children. The director of the facility testified that there had been runaways in the past but that there were no incidents associated with those individuals. He stated that the Shelter had been at its present location, on a quarter-acre lot, for seven years with no problems regarding crime in the community.

When the children leave the facility, some go to foster homes; some return home; and some go to the Wilson County Youth Ranch, another group home in Wilson County. The home operated by the Shelter is described as a "temporary emergency shelter." The facility is a United Way agency. It receives $45 per day per child from the state to help defray the daily per-child cost of $56. United Way and private fund-raising make up the difference.

II.  *The Opposition*

The Shelter's petition was met by a petition in opposition signed by 96 individuals who live in the area of the proposed site. Numerous people spoke in opposition at the hearing before the BZA.

Among the reasons given for opposing the Shelter's

3

petition were the following: because the "crime rate [is] climbing like it is"; there are elderly people in the community who don't feel safe "by having this type of shelter put in their community"; the proposed home will depreciate the values of the surrounding properties; at "other facilities,"[2] there "has been a lot of robbery around the area, break-ins"; fear that someone will break out "and rob somebody, or rape[] one of the[] kids in the neighborhood"; because there is no public sewer "out there"; "won't feel safe to let the kids roam around"; two people can't supervise "12 kids with this type background"; a nearby creek will rise and cover up the property in question; problems with sewage because of the composition of the soil; lack of water to the site; and similar complaints.

The neighbors' vocal opposition was met by statements of the Shelter's personnel to the effect that there was a water easement to the property; that a fire hydrant had already been purchased; and that the property had been approved by the Health Department for a sanitary septic tank system.

III.  *Planning Staff's Recommendation*

The Wilson County Planning Commission staff recommended approval of the Shelter's petition "if it is found by the [BZA] to follow the intent of the A-1 district."  The staff suggested that the BZA give "[c]areful consideration...to the level of services available to" the property, and stated that

_____

[2]These "other facilities" were not identified.  No one testified as to any crimes or other incidents involving the residents of the Shelter's existing facility.

there is no public water along this portion
of Highway 231 South and fire protection
would be restricted accordingly.  There's no
fire hydrant, and service would be provided
by Emergency Management from a pumper truck.
Staff is concerned with the lack of fire
protection for this proposed group home.


IV.  *BZA's Decision*


In a three-to-one decision, the BZA denied the

Shelter's petition.  As a basis for its decision, the BZA cited

the proposed "location," lack of fire protection, and the number

of people at the group home on a daily basis.


V.  *The A-1 Zone*


As pertinent to the issues on this appeal, Wilson

County's A-1 Agricultural Zone regulations provide as follows:


SECTION 5.20 AGRICULTURAL (A-1)

5.20.01 GENERAL INTENT

This district is intended to accommodate uses
typically conducted in agricultural areas, in
addition to rural density residential uses.

Within A-1 Agricultural Districts as shown on
the Official Zoning Atlas of Wilson County,
the following regulations shall apply.

5.20.02 USES PERMITTED

                *    *    *

5.20.03 USES PERMISSIBLE ON APPEAL

The following uses may be permissible on
appeal by the Board of Zoning Appeals in
accordance with provisions contained in
Section 6.40 of these regulations.

A.  Aircraft landing field, hangars and

5

equipment.

* * *

B. Automobile graveyard;
C. Bicycle service and repair;
D. Cemetery;
E. Church;
F. Commercial animal facility;
G. Country Club;
H. Dog kennel;
I. Golf course;
J. *Group home*;
K. Hospital;
L. Library;
M. Livestock holding/feeding area;
N. Manufacturing incidental to retail utilizing no more than 35% of the area of structure for manufacturing;
O. Nursing home;
P. Recreational uses;
Q. Retirement center;
R. Sanitary landfill subject to meeting all requirements of a registered solid waste disposal site as defined in Chapter 1200-1-7 of the Rules of the Tennessee Department of Public Health and Environment and any criteria identified by Wilson County officials;
S. *School*;
T. Service uses;
U. Utility and/or governmental use;
V. Uses permitted or permissible on appeal in a C-1 Neighborhood Commercial District.
W. Other similar uses as reviewed and approved by the Board of Zoning Appeals.

5.20.04 USES PROHIBITED

Uses not specifically permitted or permissible on appeal.

(Emphasis added). Pertinent provisions regarding the BZA are as follows:

SECTION 6.40 BOARD OF ZONING APPEALS

6.04.01 CREATION AND APPOINTMENT. A Wilson County Board of Zoning Appeals (hereafter referred to as the Board) is hereby established in accordance with Section 13-7-106 of the *Tennessee Code Annotated*....

6

\* \* \*

6.40.04 POWERS.  The Board shall have the following powers and duties:

\* \* \*

B.  SPECIAL EXCEPTIONS.  To hear and decide in accordance with the provisions of this regulation, requests for special exceptions, such as uses permitted on appeal,...

The Board may at its discretion require reasonable conditions be met concerning the location of structures, access to property, noise, dust, vibrations, and any other reasonable requirement the Board deems necessary to protect the surrounding property when granting special exceptions,...

\* \* \*

D.  PROCEDURE FOR AUTHORIZING A SPECIAL EXCEPTION AS A USE PERMISSIBLE ON APPEAL.  The following procedure is established to integrate properly the Uses Permissible on Appeal with other land uses located in the zone.  These uses shall be reviewed by the Board of Zoning Appeals as a Special Exception Use on Appeal request and authorized or rejected under the following procedure:

1.  APPLICATION.  An application shall be filed with the Board of Zoning Appeals for review.  Said application shall show the location and intended uses of the site, and shall be accompanied by five (5) copies of a plot plan of proposed development which has been approved by the County Health Department, together with any other material pertinent to the request which the Board may require.

2.  PUBLIC HEARING.  Upon application, the Board of Zoning Appeals shall give a ten (10) day notification of a public hearing.  Such notice of time and place of such hearing shall be published in a daily paper of general circulation in Wilson County.

3.  RESTRICTIONS.  In the exercise of its approval, the Board of Zoning Appeals may impose such conditions regarding the location, character, or other features of the proposed use of land or buildings as it may deem advisable in the furtherance of the general purpose of these Regulations.

4. VALIDITY OF PLANS. All approved plans, conditions, restrictions, and rules made a part of the approval of the Board of Zoning Appeals shall constitute certification on the part of the applicant that the proposed uses shall conform to such regulations at all times.

VI. *Applicable Law*

Zoning laws, being in derogation of the common law and tending to deprive a property owner of a use of its property that would otherwise be lawful, "are to be strictly construed by the courts in favor of the property owner." ***State ex rel. Browning-Ferris Industries of Tenn., Inc. v. Board of Commissioners of Knox County***, 806 S.W.2d 181, 187 (Tenn.App. 1990). *See also* ***Anderson County v. Remote Landfill Services, Inc.***, 833 S.W.2d 903, 909 (Tenn.App. 1991).

An action by a board of zoning appeals is an administrative rather than a legislative act. ***McCallen v. City of Memphis***, 786 S.W.2d 633, 639 (Tenn. 1990). This is because such an action "executes [a law] already in existence." ***Id***. The term "administrative" is "used interchangeably with judicial or quasi-judicial." ***Id***. at 638.

A review of an administrative action is by common law writ of certiorari. *See* T.C.A. § 27-8-101. *See also* ***McCallen***, 786 S.W.2d at 639.

"Whether the action by the local governmental body is legislative or administrative in nature, the court should refrain

8

from substituting its judgment for the broad discretionary authority of the local governmental body." *Id*. at 641-42. However, a court should invalidate a decision that is clearly illegal, arbitrary, or capricious. *Id*.

The question of whether there is sufficient evidence to sustain a zoning action is a question of law. *MC Properties, Inc. v. City of Chattanooga*, 994 S.W.2d 132, 134 (Tenn.App. 1999). Hence, appellate review is *de novo* without a presumption of correctness. *Id*.

If there is no evidence to support the zoning action, it is arbitrary. *Sexton v. Anderson County*, 587 S.W.2d 663, 667 (Tenn.App. 1979). In reviewing a zoning action, an appellate court must do so with the recognition that "the discretionary authority of the government body must be exercised within existing standards and guidelines." *McCallen*, 786 S.W.2d at 639.

VII. *Analysis*

There is no evidence to support the BZA's decision to deny the Shelter's petition for a use on review to establish a group home on property in the Wilson County A-1 Zone. The BZA based its denial on a vague reference to "location," a lack of fire protection, and the number of people living in the home. The proof simply does not sustain the BZA's reasons for denying the Shelter's petition.

At the outset, it should be noted that the A-1 Zone

9

contemplates use of property as a group home and for a school. Such uses are clearly specified as uses permitted on review. This means that an applicant for such uses cannot obtain the necessary permit to proceed with its plans without going through the appeal process outlined in the Zoning Ordinance; but once the applicant goes through the process and the requested use satisfies all other pertinent regulations of the local zoning regulations, it must be granted. The planning staff was in error when it stated that it was for the BZA to say whether a group home was an "intended use" in the A-1 Zone; *the zoning ordinance expressly says that it is.* *Cf.* **Sexton**, 587 S.W.2d at 665 (When a legislative body includes a certain use within a given zone as a use on review, such a use is an intended use in that zone).

As previously indicated, numerous citizens appeared in opposition to the Shelter's proposed use of the subject property; but "it is not a function of the board to conduct a referendum on public attitudes relative to [a] petition." 587 S.W.2d at 664 n.1. What we said in **Sexton** regarding a landfill applies with equal force here:

> Various members of the community expressed beliefs and opinions that the presence of the landfill would create noxious odors and result in falling property values; they also thought that trucks delivering refuse to the site of the fill would cause additional damage to the local roads. These statements were offered on the issue of whether the intended use is "potentially dangerous, noxious or offensive." None rises to the dignity of being material evidence on the issue. In each instance, the statements amount to an expression of opinion on the ultimate issue, unsubstantiated by factual premises. Speculations, expression of fears and considerations of an aesthetic or political nature do not form a basis to

10

> support a decision made by an administrative
> body charged with adjudicatory
> responsibility.

*Id*. at 665-66.

The only evidence before the BZA regarding fire protection was the Shelter's proof that it had a water easement to the property and that it had already purchased a fire hydrant. On the issue of a sewage system, the only proof before the BZA was that the Health Department had approved a sanitary septic tank system for the property.

When an employee of the planning commission was asked if the planned use met all requirements other than the water issue -- which, as we have noted, has in fact been fully satisfied -- he replied: "[a]s far as we are aware, yes, it does."

There is simply no evidence that the Shelter's application for a use on review violates any part or provision of the A-1 Zoning Regulation. While the BZA has authority to act under the zoning regulations, it must act "within existing standards and guidelines." *McCallen*, 786 S.W.2d at 639. It clearly does not have unbridled authority to deny an otherwise fully-compliant request simply because other citizens are opposed to the use.

VIII. *Conclusion*

The judgment of the trial court is reversed. This

11

matter is remanded to the trial court for the entry of an order directing the BZA to approve the Shelter's request for a use on review to construct a group home on the subject property. Costs on appeal and costs in the trial court are taxed to the appellees.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, P.J.

_____
Herschel P. Franks, J.