IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 6, 2022 Session

**SPORTING CLUB OF TENNESSEE, INC. v. MARSHALL COUNTY
TENNESSEE BOARD OF ZONING APPEALS**

**Appeal from the Chancery Court for Marshall County
No. 19404     J.B. Cox, Chancellor**

---

**No. M2021-01361-COA-R3-CV**

---

This appeal concerns a zoning decision.  The Sporting Club of Tennessee, Inc. ("the Sporting Club") filed an application with Marshall County, Tennessee for a special exception for a private park.  The club was to be situated on 285 acres of property and would feature a number of recreational activities like shooting.  It would have 150 members and corporate members along with their families and guests.  After a hearing, the Marshall County Board of Zoning Appeals ("the Board") denied the Sporting Club's application on grounds that the Sporting Club would not be low-impact, or passive, with respect to its surroundings.  The Sporting Club filed a petition for common law writ of certiorari in the Chancery Court for Marshall County ("the Trial Court").  The Trial Court upheld the Board's decision.  The Sporting Club appeals to this Court.  We conclude that the Board's decision was supported by material evidence—namely, evidence concerning the Sporting Club's 150 members and guests and the likely impact they would have on the property's surroundings.  The Board's decision neither was arbitrary, capricious, nor illegal.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

George A. Dean, Nashville, Tennessee, for the appellant, the Sporting Club of Tennessee, Inc.

Barbara G. Medley, Lewisburg, Tennessee, for the appellee, the Marshall County, Tennessee Board of Zoning Appeals.

# OPINION

## Background

In February 2021, the Sporting Club filed an application with Marshall County, Tennessee for a special exception for a private park. In April 2021, a hearing on the Sporting Club's application was held before the Board. Evidence for and against the Sporting Club's application was presented at this hearing. One piece of evidence from the proceedings below is an email from Keith Covington ("Covington"), a land use planner, to Don Nelson ("Nelson"), Marshall County Building Codes and Zoning Administrator. Covington wrote:

> Don:
> I was able to complete a cursory review of the application and supporting documentation for the Sporting Club of Tennessee and I have the following comments/concerns:
>
> Membership vs. Families vs. Guests
> They have stated in their application that this is a members-only facility, but they also mention "families" and "guests" throughout. I believe additional information on the definitions and restrictions on who constitutes a family member and/or guest, including the maximum numbers of each at any given time would be useful information for the BZA. Additionally, one of the letters of support from Old Hickory Smokehouse mentioned their "interest in the Corporate Membership model which will allow us to provide a retreat for customers and suppliers, while remaining within the county for entertainment." 150 members/corporate members plus family plus guests could have a significant impact that should be considered by the BZA with specific information and policies provided by the applicant.
>
> If it is determined that the proper category for this request is a Special Exception for a Private Park under Community Assembly, I have the following comments based on 8.060 Procedure for authorizing special exceptions in the Marshall County Zoning Resolution:
> > • Under "C. Criteria for Review," the BZA must make "written findings certifying that" the application is in compliance with a list of seven specific items. To make such a certification, I believe the BZA should have more information about the specific plans for this property beyond the drawings that have been provided. The site plan is very generic and diagrammatic in nature and includes a site layout that from all appearances looks to be from another site. The drawing

does not include topography, other natural features, and context to make a clear decision as to whether the use effectively mitigates its impact.

• "E. Validity of Plans" is a reminder that the granting of a Special Exception runs with the property, not the owner(s). It is imperative to have enough information to make a decision.

• "L. Special Conditions for Community Assembly" indicate that the proposed facility shall not "adversely affect the properties within the surrounding area." I believe the burden of proving this should fall on the applicant, so that the BZA has all of the necessary information to make a decision.

I hope this helps.
Keith

The Board ultimately denied the Sporting Club's application. In May 2021, the Sporting Club filed a petition for common law writ of certiorari in the Trial Court. In its petition, the Sporting Club stated, in part:

17. A planning analysis by a well qualified planning expert was also submitted. She reviewed the requirements for the special exception from a planning perspective, and concluded that all requirements were met by the application.

18. A traffic review filed by the petitioner also indicated that the small amount of additional traffic would have no discernible impact on surrounding highways. This review was not mandated by the provisions of the zoning regulations but offered by the applicant in an effort to reassure County officials that impact on the surrounding properties would be minimal.

19. Finally a real estate broker compared properties used exclusively for shooting activities and concluded that there would be no impact on property values even if the only activity on this 285 acre site was shooting related. This review was not mandated by the provisions of the zoning regulations but offered by the applicant in an effort to reassure County officials that impact on the surrounding properties would be minimal.

20. The public hearing was lengthy and contested with a large number of neighbors opposing the application.

21. The public hearing was closed after presentations by both the petitioner and numerous neighborhood opponents of the project.

22. The Board of Zoning Appeals disapproved the application even though the petitioner clearly demonstrated compliance with all requirements.

23. Tennessee courts presume that special exceptions serve the public interest when located in the district where it is authorized.

24. Classification of a use as one that is permitted as a special exception constitutes a legislative finding that the use accords with the general zoning plan, is in harmony with, or will not adversely affect, the surrounding neighborhood, and meets a public need.

25. The decision of the Marshall County Board of Zoning Appeals was illegal, arbitrary, and/or capricious in that there was no evidence to justify its decision denying approval of the requested special exception.

The Board filed an answer to the Sporting Club's petition. In its answer, the Board stated as follows, in part:

It is admitted that the BZA denied the application for the special exception for the private park. Mr. Wilson of the BZA made the motion to deny the special exception for the private park stating that he did not consider the use low impact or passive by the definition that was provided. Mr. Kelso seconded the motion and it unanimously passed. The procedure for authorizing special exceptions is set forth at 8.060 of the Marshall County Zoning Regulations. The general requirements provide that a conditional use permit (a special exception) shall be granted provided the Board finds that it:

A. Is so designed, located and proposed to be operated so that the public health, safety and welfare will be protected.

B. Will not adversely affect in the area in which it is located.

C. Is within the provision of "special exceptions" as set forth in this ordinance.

D. Conforms to all applicable provisions of this ordinance for the district in which it is to be located as well as provisions cited in Section 8.060 and is necessary for public convenience and the location planned.

According to Mr. Wilson of the BZA, they have reasonable concern and could not find that the conditional use would not adversely affect the area in which it is located.

The criteria for review set forth in 8.060 includes seven (7) factors which must be met prior to the issuance of special exception. It was determined that criteria numbers two (2), five (5) and seven (7) were not proven and would be reasons for denying this special exception. In particular, number two (2) provides, "Economic, noise, vibrations, glare, or odor effects of the special exception on or by adjoining properties and properties generally in or near the district.["] Number five (5) provides screening and buffering with referenced to type, dimensions and character.

Seven (7) provides general compatibility with adjacent properties and other property in the district.

It is denied that the Petitioner clearly demonstrated compliance with all requirements as set forth above.

(Internal record citations omitted).

In November 2021, the Trial Court entered its final order in which it upheld the Board's decision. The Trial Court stated, in part:

The dispute concerns Petitioner's attempt to obtain the special use exception and have a private park designation on approximately 285 acres in North Chapel Hill, in Marshall County, near the Williamson County line. For context, the private park would be a club of private entities that offers club members various outdoor recreational activities, such as shooting, hunting, fishing, kayaking, hiking, and outdoor pursuits. From the record, a club house much akin to a private golf club house, would be built on the land.

To further its application, Petitioner appended numerous exhibits addressing its plans for the club and offered the opinion of experts relating to land use planning and traffic engineers. Petitioner went to great lengths to provide the BZA information from which it could make a reasonable decision.

The BZA heard from Mr. Don Nelson who made the initial decision to deny the permit. Mr. Nelson went to great lengths explaining his position that the application as submitted is not the proper way to go about obtaining what the Petitioner desires. He was of the strong opinion that Petitioner should have pursued as a zoning change as another shooting range (Strategic Edge) had done, instead of a special use exception. During the course of his work in preparing for the public hearing, he reached out to another land use planner, Mr. Covington, who wrote an email that is part of the record. Mr. Nelson not only explained the public hearing process, he then served as a witness within the public hearing.

Mr. Nelson was not the only witness. Numerous members of the community spoke against granting the exception. Emotions ran high and witnesses testified to the potential negative effects that they perceived if the special use exception were granted. They testified as to the noise and disruption of life that would occur if the Sporting Club were permitted to operate in Marshall County. They testified that their perception was that their property values would decrease if this special use exception were allowed by the BZA. One property owner even offered evidence based upon a realty website that generally provided that property values decrease in proximity to

-5-

a shooting range.  However, these opinions and conclusions were not backed up by expert proof.

After the conclusion of the public hearing, the BZA considered its actions.  The Court finds it important to reproduce the record as it exists concerning the actions of the BZA.  For context, Ms. Medley is the county attorney and was acting as such in giving advice to the BZA on the night in question.  After closing the public hearing, the BZA chairman opened the BZA meeting and the following occurred:

> "Mr. Chairman: I'm going to close the public hearing and let the Board discuss this any way y'all would like to do it, and I'll accept a motion one way or the other.
>
> Mr. Wilson: What we have in front of us — I don't know if everybody can hear me — what we have in front of us is a request for a special exception for a private park: is that right?
>
> Ms. Medley: Right. And also reviewing the — administrative decision of Mr. Nelson.  And he has determined that it would not meet the definition, and he's also determined it would be more appropriately presented to the Planning Commission as an issue of rezoning rather than being a special exception under the Agricultural Zoning Regulations. You're considering their application but in doing that you're considering whether he was correct in the decisions he made during the initial process.
>
> Mr. Kelso: What's the precedent?
>
> Ms. Medley: Well, I think — I think he probably — that Mr. Nelson gave precedent on a similar situation is when the — what was the name of it? — Strategic Edge.  They pointed out that there was a shooting range out there and it was zoned agricultural so they had to go before the Planning Commission and request it be rezoned.  But that's the closest precedent that was discussed today.
>
> Mr. Wilson: Mr. Chairman, I'd like to make a motion if I may?  My motion would be to deny the special exception for the — private park.  I do not consider the use low impact or passive by the definition that was provided, and for that reason I would make a motion to deny the special exception.
>
> Mr. Chairman: A motion's been made.  Do I hear a second?
>
> Mr. Kelso: Second.

Mr. Chairman: All those in favor say aye.

(Board members vote.)

Mr. Chairman: (Inaudible.) Continue discussion.

Ms. Medley: I just — under our zoning regulations, when you are ruling on a special exception, you're really supposed to make a finding of fact. I do not know if you want to say that on the record or if you want to submit a written finding of fact.

It's General Requirements when the BZA is ruling on procedures or authorizing special exceptions. And I don't know if you've got that in front of you, Will, it is Page Roman Numeral 3.4 of the zoning regulations.

Mr. Wilson: I'm sorry Barbara. What do you mean? I don't understand that rule.

(Respite)

Mr. Chairman, so I'm in Section 8 on Page 4 under the "General Requirements." Item B is that — it states: Will not adversely affect other property in the area in which it's located. And I do believe that we have a reasonable concern that that is not going to be the case.

And then moving over to Section 8, Page 5 under the "Criteria for Review." Item 2: Economic, noise, vibrations, glare, and odor effects of the special exception. So that would be a reason for denying there. Screening and buffering with reference to type, dimensions, and character would be — Item 5 would be a reason. And Item 7 is general compatibility with adjacent properties and other property in the district, and so denied for those reasons.

Mr. Chairman: Thank you Mr. Wilson. I'm going to call this meeting adjourned."

\*\*\*

This was an application for a special use exception. The property is presently zoned A-1 for agricultural and forestry purposes within Marshall County's zoning ordinance. Applicants seek to use the property as a private park for operation of a private club. The definition of "private park" in the zoning ordinance is:

A tract of land presently owned or controlled and used by private or semi-private persons, entities, group, etc. for the low

-7-

impact active and/or passive recreational purposes. This definition is inclusive of small scale, private race tracks; paint ball facilities and fields; or other such group assembly land uses that are determined by the Building Inspector, to be of a low intensity impact and have a low impact on the surrounding land owners. This use, allowed only as a Special Exception in A-1, Agriculture — Forest District, is subject to the restrictions, enumerated in Article VIII, Section 8.060 herein.

BZA Record at page 129.

***

In stating that he did not believe that the proposed use of the property qualified as a low impact use, Mr. Wilson was expressing his agreement with Mr. Nelson's determination that the proposed use did not in fact conform with the definition of a private park. Mr. Wilson's motion to deny the application on this basis was properly seconded and voted upon by the Board. Therefore, the Court must review this decision pursuant to the common law writ of certiorari to determine whether this decision, in essence to uphold Mr. Nelson's assessment that the proposed use did not fall into the definition of a private park, was based upon material evidence or whether this decision was made unlawfully.

A thorough review of the record reveals that Mr. Nelson formed his opinion based upon his consultation with Mr. Covington the land planner. The statements that concerned Mr. Nelson were that it was impossible to determine the use based on the information that was presently in the record. There was a great concern that if there were one hundred fifty members and guests on the property for a shooting event that involved hunts and training for those hunts that this would in fact be a high impact use as opposed to a low impact use. This evidence represents material evidence by which the BZA could reach the conclusion that it reached.

Even though there was contrary evidence in the record, Mr. Nelson is empowered by the zoning regulation to make this determination. It appears that there was enough information not raised by public opinion with which to base his decision that the use was incompatible with characterizing the use as a private park and that the intensity of anticipated activity was indeed too high to say it was a low impact active or passive use.

Therefore, given the deferential standard forced upon the Court in these type [of] cases, the Court is compelled to uphold the decision of the BZA.

The Sporting Club timely appealed to this Court.

## **Discussion**

Although not stated exactly as such, the Sporting Club raises the following issues on appeal: 1) whether the Board acted arbitrarily, capriciously, illegally, and without sufficient basis in fact in denying the Sporting Club's application and 2) if the Board erroneously denied the application, whether the Sporting Club should receive an award of attorney's fees under the Tennessee Equal Access to Justice Act, Tenn. Code Ann. § 29-37-101 *et seq*.

In *Leonard Plating Company v. Metropolitan Government of Nashville and Davidson County*, we discussed the limited and deferential standard applied to decisions reviewed under a common law writ of certiorari as follows:

> The scope of review afforded by a common-law writ of certiorari is extremely limited. Reviewing courts may grant relief only when the board or agency whose decision is being reviewed has exceeded its jurisdiction or has acted illegally, arbitrarily, or fraudulently.
>
> Review under a common-law writ of certiorari does not extend to a redetermination of the facts found by the board or agency whose decision is being reviewed. The courts may not (1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency. However, they may review the record solely to determine whether it contains any material evidence to support the decision because a decision without evidentiary support is an arbitrary one.
>
> Ascertaining whether the record contains material evidence to support the board's or agency's decision is a question of law. For the purpose of this inquiry, "material evidence" is relevant evidence that a reasonable person would accept as adequate to support a rational conclusion. The amount of material evidence required to support a board's or agency's decision must exceed a scintilla of evidence but may be less than a preponderance of the evidence.

*Leonard Plating Co. v. Metro. Gov't of Nashville and Davidson Cnty.*, 213 S.W.3d 898, 903-04 (Tenn. Ct. App. 2006) (citations and footnotes omitted).

We first address whether the Board acted arbitrarily, capriciously, illegally, and without sufficient basis in fact in denying the Sporting Club's application. The Sporting Club agrees that the sole dispositive question before this Court is whether the record contains material evidence to support the Board's decision to deny the Sporting Club's application on grounds that the club would not have a "low impact" on its surroundings.[1] The Sporting Club makes a number of arguments as to why it believes the Trial Court erred in upholding the Board's decision, to wit: that its activities would not adversely impact its neighbors as the property at issue is 285 acres in size and is effectively buffered; that Covington's email was not a sufficient basis upon which to deny its application; that Covington wrongly placed the burden of proof on the Sporting Club; that Covington's concerns about the impact of club members and their guests constituted mere speculation on his part; and that Covington's opinion must be discounted because he did not personally attend the hearing before the Board. The Sporting Club also notes the extensive public opposition to its application, suggesting that the Board's decision was based more upon placating the public than upon material evidence. *See Crawley v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2021-00210-COA-R3-CV, 2022 WL 1015544, at *7 (Tenn. Ct. App. Apr. 5, 2022), *no appl. perm. appeal filed* (quoting *Sexton v. Anderson Cnty.*, 587 S.W.2d 663, 666 (Tenn. Ct. App. 1979)) ("Speculations, expression of fears and considerations of an aesthetic or political nature do not form a basis to support a decision made by an administrative body charged with adjudicatory responsibility.").

Our standard of review in this matter is narrow. We do not make a fresh determination as to whether the Sporting Club's application should be granted. Rather, in keeping with the limited and deferential common law writ of certiorari standard, we review whether the Board's decision was supported by material evidence. In his email to Nelson, Covington stated in part that "150 members/corporate members plus family plus guests could have a significant impact that should be considered by the BZA with specific information and policies provided by the applicant." This observation by Covington squarely relates to the question of the club's likely impact on its neighbors. Indeed, we can well see how a membership including corporate memberships of the size planned by the Sporting Club, along with guests and family, could adversely impact the surrounding area. This requires no illogical leap or stretched assumption; Covington's email and the facts undergirding it constitute "relevant evidence that a reasonable person would accept as adequate to support a rational conclusion." *Leonard Plating Co.*, 213 S.W.3d at 904 (citations omitted). That is to say, it is material evidence, of which there is more than a scintilla. While the Sporting Club argues that Covington's non-attendance at the hearing

---

[1] The Sporting Club argues that ordinance/regulation 3.130 concerning outdoor firearms training facilities and shooting ranges on county-owned property, a subject of contention below, is inapplicable as the Sporting Club did not seek to operate a shooting range, *per se*, and the property at issue is not owned by the county. We agree with the Sporting Club that this ordinance/regulation is inapplicable insofar as the property at issue is not county-owned.

means that his opinion should be discounted, the Sporting Club's prospective membership and policy of allowing guests is established in the record. Covington's personal appearance was not necessary to further substantiate this evidence. The Sporting Club, too, relied largely upon submitted documentary evidence. The evidence available to the Board regarding the size of the Sporting Club's membership at 150 members including corporate memberships, as well as its guest policy, was sufficient to sustain the Board's decision. Finally, we discern no evidence that the Board's decision was based simply upon negative public opinion. That there was significant public opposition to granting the Sporting Club's application at the hearing below does not mean, *ipso facto*, that the Board's decision to deny the application was unsupported by material evidence.

The Sporting Club nevertheless points to evidence it submitted in favor of its application, including the opinion of a rural planning expert who concluded that the Sporting Club's application met all of the necessary requirements for a private park. However, that material evidence exists in this record to support another possible result by the Board does not mean that the Board's ultimate decision was unsupported by material evidence. While two contrary positions cannot both be supported by a preponderance of the evidence, each such position can be supported by material evidence. Under our applicable limited standard of review, we are not to reweigh the evidence or substitute our judgment for that of the Board. As to this question of law, we conclude that the Board's decision to deny the Sporting Club's application was supported by material evidence. The Board's decision neither was arbitrary, capricious, nor illegal.[2] We affirm the judgment of the Trial Court.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Chancery Court for Marshall County for collection of the costs below. The costs on appeal are assessed against the Appellant, the Sporting Club of Tennessee, Inc., and its surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

---

[2] The Sporting Club's second issue concerning its request for an award of attorney's fees is pretermitted as it depended upon success in the first issue.