# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 4, 2010 Session

## ANDREW BERNARD SHUTE, JR., ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE, DAVIDSON COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 08-2761-II     Joseph P. Binkley, Jr., Judge**

**No. M2009-01417-COA-R3-CV - Filed August 5, 2010**

The Nashville Metropolitan Council approved a Planned Unit Development (PUD) for a large residential subdivision to be constructed by Habitat for Humanity. The Metropolitan Planning Commission subsequently approved a site plan for the first phase of the subdivision, over the objections of neighboring landowners, who then challenged the approval by filing a petition for writ certiorari in the Chancery Court. The petitioners also mounted a challenge against the entire project based on the ground that the PUD had become "inactive" because construction had not yet begun, even though six years had passed since it was initially approved. The Planning Commission rejected the challenge, finding that the project was still "active" and, therefore, that the PUD did not have to go through the process of approval for a second time. The neighbors then filed a second petition for writ of certiorari. The trial court consolidated the two petitions and heard arguments that the procedures the Planning Commission followed in reaching its decisions violated the petitioners' constitutional rights. The court dismissed both petitions, ruling that the Planning Commission had not acted illegally, arbitrarily or fraudulently, and that the petitioners' constitutional rights were not violated. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Larry Woods, Allen N. Woods, II, Nashville, Tennessee, for the appellants, Andrew Bernard Shute, Jr. and Concerned Neighbors of Nashville.

Sue B. Cain, Director of Law, Metropolitan Government of Nashville and Davidson County, Lora Barkenbus Fox, Jeff Campbell, Assistant Metropolitan Attorneys, for the appellees,

Metropolitan Government of Nashville and Davidson County, Tennessee, Metropolitan Planning Commission,

M. Taylor Harris, Jr., Nashville, Tennessee, for the appellee, Nashville Area Habitat For Humanity, Inc.

## OPINION

### I. BACKGROUND

Habitat for Humanity is a nationally-known non-profit organization whose goal is to provide affordable housing for working families through the use of low-interest loans, volunteer labor, and the participation of the prospective homeowners in the construction process. In the year 2000, Nashville Area Habitat for Humanity (hereinafter "Habitat") signed a contract to purchase 260 acres of undeveloped land between Brick Church Pike and Whites Creek Pike in Nashville. The land was already zoned for residential use.

In 2002, Habitat submitted a plat for a Planned Unit Development (PUD) for the undeveloped land to the Nashville Metropolitan Council.[1] The PUD, to be called Park Preserve, called for the construction by Habitat of 327 multi-family units and 416 single-family homes. About 140 acres, or 53% of the PUD's total acreage, was designated as open space. If developed as planned, Park Preserve would become the largest Habitat for Humanity development in the nation. On July 16, 2002, Metro Council approved the Park Preserve PUD by ordinance.

When Habitat contracted to purchase the land, it did not yet have the funds in hand to complete the purchase. It launched a fundraising campaign, which enabled it to close on the property on May 30, 2008, at a cost of more than $2.7 million. Habitat then presented a concept plan for Phase I of Park Preserve to the Metropolitan Planning Commission.[2]

---

[1]The Subdivision Regulations of the Nashville-Davidson County Metropolitan Planning Commission defines a Planned Unit Development as "[a]n overlay zone district created by approval of the Metropolitan Council for the purpose of permitting a specific development or land uses." Subdivision Regulations 7-2 (Words and Terms Defined).

[2]The term "concept plan" replaced the term "preliminary plat," in the lexicon of the Metropolitan Planning Commission. It means, "A plan drawn to scale that shows street, lot, and open space layouts, public dedications, and reservations, if any, and proposed environmental changes to the tract. It includes topographical information, existing site conditions, analysis, and off-site conditions to a minimum of 300 feet beyond the property boundaries." Subdivision Regulation 7-2 (Words and Terms Defined)

The concept plan involved 10.31 acres, which was to be divided into 34 lots for single family homes.[3] A new public road was included in the plan, as well as five foot wide sidewalks throughout the development and a landscape buffer on one side of the site to screen the development from neighboring property. The plan also set aside 2.45 acres as open space, including a "playfield" and playground equipment.

After studying the concept plan, the Planning Staff recommended approval, subject to conditions related to Fire Marshall and Public Works requirements. The Planning Commission then considered the question at a public hearing on September 25, 2008. The Commissioners heard from twenty-six members of the public during the hearing, some of whom spoke in favor of approving the plan and some who were opposed.

Many of those opposed stated that they respected the mission and values of Habitat for Humanity, but that they felt the proposal for such a large development would have a negative impact on the neighborhood, especially in light of the two other large clusters of Habitat Homes nearby.[4] At the conclusion of public input and of discussion among Commission members, the Planning Commission voted to defer taking any action until their next meeting, in order to give Habitat, members of the community, and Council members the chance to meet and to discuss their areas of disagreement.

The record contains the minutes of a meeting conducted on October 15, 2008, between representatives of Habitat and of thirteen homeowner associations in the area, with Council members Frank Harrison and Walter Hunt in attendance. The attendees discussed the elements of a good neighborhood and the dangers they wished to avoid. They still remained far from agreement on Habitat's plans, and they agreed to continue the discussion by meeting again.

The next meeting of the Planning Commission was conducted on October 23, 2008. Every commissioner expressed some concern about the objections of the neighbors to the size of Park Preserve, but most of them acknowledged that if the Phase I concept plan met all the subdivision and zoning requirements, the Commission did not have the authority to reject it. At the conclusion of deliberations, a motion was raised to disapprove the plan, which was defeated. The Commissioners ultimately determined that the concept plan met all

_____

[3]Habitat had earlier won approval for a concept plan on the same tract which included 46 lots for single family homes. However, Habitat did not record the plat, and it accordingly expired after two years.

[4]Thirty residents of the Vantage Pointe subdivision, which adjoins the Habitat land, signed a letter prior to the meeting to announce their strong opposition to the plan. The letter stated that such a large development would reduce property values, increase crime and drug use, overcrowd the schools, and cause the roads to become congested.

the requirements for a subdivision, and they voted to approve the plan, subject to the conditions recommended by the Planning Staff. The vote was six in favor, two against.

Another proceeding related to the proposed development occurred on December 11, 2008, when the Planning Commission met to take up an application by Metro Council Member Frank Harrison for a periodic review of the Park Preserve PUD to determine if it was "inactive." Such a review is authorized if six or more years have elapsed since the effective date of the ordinance authorizing the PUD and on-site construction has not yet begun. *See* Metro Code of Laws 17.40.120(H). The Planning Staff recommended that the Commission find the PUD to be inactive, but also that it recommend to the full Metro Council that the PUD be re-approved with no amendments or changes to the existing zoning.

According to the minutes of that meeting, Council members Harrison and Hunt both addressed the Commission and recommended that the PUD be declared inactive. Supporters and opponents of the development were again able to address the Commission. For its part, Habitat presented evidence as to the activities it had undertaken on the project during the previous 12 months. These included extensive fundraising, closing on the purchase of the land, hiring engineers and architects, preparing environmental site assessments, meeting with Council members and homeowners association representatives, paying water and sewer capacity fees to Metropolitan Government, and holding a groundbreaking ceremony. The Commission ultimately determined by a vote of six to three that the PUD remained active "due to the specific and unique aggregate of actions taken by the current non-profit owner as presented in the oral presentations and written record."[5]

## II. TWO PETITIONS FOR CERTIORARI

On December 19, 2008, Andrew Shute and an organization called Concerned Neighbors of Nashville, purportedly made up of landowners with property adjacent to or near Park Preserve, filed a petition for writ of certiorari in the Chancery Court of Davidson County.[6] The petitioners asked the trial court to enjoin Habitat from any further work on the project, on the ground that the Planning Commission had deprived them of their due process

---

[5]Under Metro Code of Laws 17.40.120(H)(3)(a), in determining whether or not a PUD should be declared inactive, the Planning Commission "shall also take into account the aggregate of actions, if any, taken by the owner in the past 12 months."

[6]Andrew Bernard Shute, Jr., the lead petitioner in both petitions for certiorari, is not otherwise identified in either, but is presumably a member of the group "Concerned Neighbors of Nashville." That group is described as "a not for profit community organization composed of hundreds of residential homeowners and occupants in the neighborhood adversely impacted by the proposed development of the Park Preserve." No other individual member of Concerned Neighbors was named or identified in either petition.

rights by approving the concept plan for Phase I of the Park Preserve in the meeting of October 23, 2008 without setting out written findings of fact or conclusions of law.

On February 5, 2009, the same petitioners filed a second petition for writ of certiorari, to challenge the Planning Commission's finding that the PUD was still active. They asserted the same due process grounds as they had in the first petition. In both petitions, the petitioners relied on Tenn. Code Ann. § 13-4-304(b), and on the case of *Levy v. State Board of Examiners*, 553 S.W.2d 909, 913 (Tenn. 1977) for the proposition that in order to satisfy the requirements of due process, the Planning Commission was obligated to support its decisions by setting out specific findings of fact and conclusions of law.

The Chancery Court consolidated the two petitions for purposes of trial, reviewed all the pleadings and documents filed in the case, and conducted a hearing on May 29, 2009.[7] The trial court's determination is found in an order filed on June 10, 2009. The court set out its findings of fact and conclusions of law, as is required in judicial review by certiorari of the actions of boards and commissions. *See* Tenn. Code Ann. § 27-9-111(c). The court discussed the arguments of the petitioners, found them to be without merit, and accordingly denied the writs and dismissed the two petitions. This appeal followed.

## III. ANALYSIS

### A. The Standard of Review

Tennessee Code Annotated § 27-9-101 provides for judicial review of a decision by any local board or commission by the filing of a petition for a common law writ of certiorari. *See Lafferty v. City of Winchester,* 46 S.W.3d 752, 758 (Tenn. Ct. App. 2000); *Wilson County Youth Emergency Shelter v. Wilson County*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999); *Walker v. Metropolitan Bd. Of Parks And Recreation,* Nos. M2007-01701-COA-R3-CV, M2008-01226-COA-R3-CV, M2008-02218-COA-R3-CV, M2008-01748-COA-R3-CV, 2009 WL 5178435 at *18 (Tenn. Ct. App. Dec. 30, 2009) (Petitions to Rehear Denied Jan. 11 and 26, 2010) (Rule 11 perm. app. denied June 30, 2010).

The scope of review under the common law writ of certiorari is very narrow. It does not involve an inquiry into the intrinsic correctness of the decision of the tribunal below, but only as to whether that tribunal has exceeded its jurisdiction, or acted illegally, fraudulently or arbitrarily. *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990); *Hutcherson v. Lauderdale County Bd. of Zoning Appeals,* 121 S.W.3d 372, 375 (Tenn. Ct. App. 2003);

---

[7]Circuit Court Judge Joe P. Binkley, Jr. sat by interchange in this case after Chancellor McCoy recused herself.

*Lafferty v. City of Winchester,* 46 S.W.3d at 759. A court does not have the authority to re-weigh the evidence or to substitute its own judgment for that of the Commission. *Hoover, Inc. v. Metro Bd. Of Zoning Appeals*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996). If there is no material evidence to support a tribunal's action, it is arbitrary or illegal. *Harding Academy v. Metropolitan Government of Nashville*, 207 S.W.3d 279, 283 (Tenn. Ct. App. 2006); *Wilson County Youth Emergency Shelter v. Wilson County,* 13 S.W.3d at 342; *Sexton v. Anderson County,* 587 S.W.2d 663, 667 (Tenn. Ct. App. 1979).

The trial court's review of the evidence is confined to the administrative record, except that additional evidence may be introduced for the sole purpose of determining whether the tribunal below has exceeded its jurisdiction, or acted illegally, fraudulently or arbitrarily. Tenn. Code Ann. § 27-9-111(b); *Watts v. Civil Serv. Bd. for Columbia,* 606 S.W.2d 274, 277 (Tenn. 1980); *Hemontolor v. Wilson County Board of Zoning Appeals,* 883 S.W.2d 613, 618 (Tenn. Ct. App. 1994).

Our review of the evidence on appeal can be no broader or more comprehensive than the trial court's review. *Watts v. Civil Serv. Bd. for Columbia,* 606 S.W.2d at 277; *Jacks v. City of Millington Bd. of Zoning Appeals*, 298 S.W.3d 163, 167 (Tenn. Ct. App. 2009). The determination that the Phase I concept plan complied with all the relevant statutory and regulatory requirements is a conclusion of law. Additionally, the arguments of the appellants are based on alleged constitutional violations, which also raise questions of law. We review conclusions of law *de novo* without any presumption of correctness. Tenn. R. App. P. 13(d); *Demonbreun v. Metropolitan Board of Zoning Appeals,* 206 S.W.2d 42, 44 (Tenn. Ct. App. 2005); *Wilson County Youth Emergency Shelter v. Wilson County*, 13 S.W.3d at 342.

### B. A Deprivation of Property?

The petitioners framed their arguments on appeal, as they did in the court below, in terms of a lack of due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and by the Law of the Land Clause of the Tennessee Constitution, Article 1 § 8. Both constitutional provisions prohibit the state from depriving a person of life, liberty, or property without due process of law.

A major omission in the petitioners' argument is their failure to identify a constitutionally protected property interest that they were deprived of as a result of the Planning Commission's approval of a housing development on land close to or adjoining their own. They stated in general terms that the members of Concerned Neighbors of Nashville "are concerned about the development of Park Preserve and its impact on the neighborhood and property values," and that they "are directly and adversely affected by the decisions of Metropolitan Planning Commission . . ." but they did not explain how these

allegedly adverse effects became a deprivation of property.

This court has had several opportunities to examine the question of whether the possibility of a reduction in the value of adjoining property is a sufficient basis for prohibiting an otherwise lawful development from going forward, and we have consistently answered the question in the negative. "Although these adjacent property owners may be justifiably concerned as to the adverse effect that may be had on the value of their property, this does not permit an administrative agency to deny an adjoining property owner the right to use his property for lawful purposes and not in violation of zoning or restrictions." *Mullins v. City of Knoxville*, 665 S.W.2d 393, 397 (Tenn. Ct. App. 1983) (citing *Harrell v. Hamblen County Quarterly Court*, 526 S.W.2d 505 (Tenn. Ct. App. 1975)).

But even if we were to deem a reduction in the value of the petitioners' property to amount to a deprivation of constitutionally protected property rights, there is no proof in the record that the development of Park Preserve would in fact reduce the value of the adjoining property, or would cause any of the other detrimental effects cited by the petitioners. "Mere beliefs, opinions and fears of neighborhood residents do not constitute material evidence." *Mullins v. City of Knoxville*, 665 S.W.2d at 396 (citing *Sexton v. Anderson County,* 587 S.W.2d 663, 666 (Tenn. Ct. App. 1979)).

**C. Due Process Arguments**

If we were to assume, *arguendo*, that the petitioners in this case possessed a property right that the Planning Commission's decision deprived them of, the question would then be whether the process which resulted in that deprivation accorded them all the due process that they were entitled to. The two most essential ingredients of due process are notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *Wells v. Tennessee Board of Regents*, 9 S.W.3d 779, 787 (Tenn. 1999); *Manning v. City of Lebanon*, 124 S.W.3d 562, 566 (Tenn. Ct. App. 2003); *State v. AAA Bail Bonds*, 993 S.W.2d 81, 86 (Tenn. Crim. App. 1998).

The administrative record contains a list of 179 residents of zip code 37207 who were notified of the public hearing of September 25, 2008. The transcript of that hearing shows that twenty-six citizens were able to address the Commission about their concerns or about their opinion of the project. Others made their opinions known through the use of letters and at least one petition. The meeting of December 11, 2008 enabled some of the same individuals to again state their opinions. The petitioners do not argue that they were deprived of notice or of the opportunity to be heard, or that their point of view was somehow excluded from the proceedings. They contend, rather, that flaws in the procedures followed by the Planning Commission deprived them of their due process rights.

The petitioners' first argument is that the failure of the Planning Commission to issue written findings of fact or conclusions of law to accompany their decisions is a violation of due process. They do not cite any Tennessee statute or any Metro Ordinance that would require the Planning Commission to set out findings of fact or conclusions of law under the circumstances of this case. Administrative bodies are not required to make specific findings of fact unless a statute or ordinance requires them. *Moore v. Metropolitan Board of Zoning Appeals*, 205 S.W.3d 429, 436-37 (Tenn. Ct. App. 2006) (citing *Weaver v. Knox County Bd. of Zoning Appeals*, 122 S.W.3d 781, 785 (Tenn. Ct. App. 2003)).

The petitioners do cite Tenn. Code Ann. § 13-4-304, which under Section (b) states that, "[t]he ground of disapproval of any plat shall be stated upon the records of the commission." However, in this case the Planning Commission approved the plat (or "concept plan") that was before it. Presumably, the statute requires a statement of the ground for disapproval so the applicant can be certain in what respect it failed to comply with the subdivision regulations. The applicant may then either attempt to correct the non-compliant portion of its plan and file a new application, or prepare an appeal that focuses on the Commission's reasoning and on the evidence it relied upon to reach its decision. Conversely, if the concept plan is approved, that would indicate that the Commission has found that it does comply with all the zoning and subdivision requirements, and thus that no other findings are required. In any case, the Planning Commission is not statutorily required to set out findings of fact and conclusions of law when it approves a plat.

Petitioners also rely on the case of *Levy v. State Board of Examiners*, 553 S.W.2d 909, 913 (Tenn. 1977), for the proposition that due process requires that the Commission set out specific findings of fact and conclusions of law. In that case, our Supreme Court reversed a decision by a State licensing board because it did not include adequate findings of fact and conclusions of law in its final order. The Supreme Court based its decision on the provisions of the Administrative Procedures Act, which specifically requires such findings and conclusions. However, the Act applies primarily to departments and agencies of state government, and it specifically declares that it does not apply to "county and municipal boards, commissions, committees, departments or officers." Tenn. Code Ann. § 4-5-106(a).[8] Thus, petitioners' reliance on *Levy* is misplaced.

_____

[8]There is a statutory exception to this provision: Tenn. Code Ann. § 27-9-114(a)(1) states that "Contested case hearings by civil service boards of a county or municipality which affect the employment status of a civil service employee shall be conducted in conformity with contested case procedures under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, part 3." *See* also *City of Memphis v. Civil Service Com'n of City of Memphis*, 216 S.W.3d 311, 315 (Tenn. 2007). That exception does not aply here.

Even if specific findings of fact might have helped the court below (and this court) to better understand the basis for the Planning Commission's decision, the absence of such findings does not preclude a meaningful review of that decision. The administrative record was considered by the trial court and is part of the record on appeal. It includes the transcripts of every relevant meeting, all the documents that were submitted to the Commission, including letters, petitions, maps, plats, reports by the Planning Commission staff and copies of Metro ordinances. A majority of the Commissioners stated that if the Concept Plan met all the subdivision requirements, they were legally obligated to approve it. Thus, we need not resort to guesswork to determine the evidentiary basis of the decision under review, but can examine that evidence directly. *See Moore v. Metropolitan Board of Zoning Appeals*, 205 S.W.3d at 436.

Petitioners' final argument is that the decision of the Metro Planning Commission was arbitrary because it was not based on sworn testimony. Their theory is that unsworn testimony cannot be considered material evidence, and that since there is no sworn testimony in the record, there was no material evidence to support the Commission's decision.[9] They also claim that the lack of sworn testimony is a deprivation of due process. They do not cite any Tennessee law for this proposition, and they acknowledge that this is "a case of first impression in the Tennessee appellate courts."

The petitioners assert that everyone who makes a statement at a public hearing should have to swear to tell the truth, just as witnesses in a court of law are sworn. To support this assertion, they cite a number of cases in which the courts have discussed the importance of sworn testimony in trial proceedings, and they argue that "[t]his reasoning should apply with even greater force to administrative agency decisions, especially considering the breadth and scope of administrative power in daily lives and in government . . ." The petitioners accordingly urge us to take the bold step of declaring a new standard for the conduct of administrative proceedings, in the absence of any legislative mandate, or any proof that such a step would be effective, helpful, or practical.[10]

But courts that have considered such questions, including the United States Supreme Court, have reached a different conclusion: ". . . differences in the origin and function of administrative agencies 'preclude wholesale transplantation of the rules of procedure, trial,

---

[9]This argument ignores the fact that the Planning Commission staff reviews all applications, including plats or concept plans, for the purpose of determining compliance with legal requirements. Presumably, the staff verifies all relevant information before making recommendations to the Planning Commission. Documents submitted in support of an application, such as plats and plans, constitute evidence.

[10]Petitioners have not pointed out any fact relied on for proof of compliance that they allege is false.

and review which have evolved from the history and experience of courts.'" *Mathews v. Eldridge,* 424 U.S. 319, 348 (1976)(quoting *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 143 (1940)).

The *Mathews* court went on to suggest that when it comes to the establishment of procedures for administrative bodies to follow, the courts should defer to the judgment of the legislative branch of government. *Mathews v. Eldridge,* 424 U.S. 319 at 349. *See* also *McCallen v. City of Memphis*, 786 S.W.2d at 342-43; *Fallin v. Knox County Bd. of Commissioners*, 656 S.W.2d 338, 342 (Tenn. 1983); *Faust v. Metropolitan Government of Nashville*, 206 S.W.3d 476, 481 (Tenn. Ct. App. 2006); *Far Tower Sites, LLC v. Knox County*, 126 S.W.3d 52, 69 (Tenn. Ct. App. 2003).

The Tennessee legislature has not chosen to require that parties appearing in front of local boards and commissions be sworn before their statements and testimony can be received by those bodies. It also appears to us that the imposition of such a requirement would increase the burden on official bodies that are largely composed of lay persons untrained in the law, while not necessarily increasing the reliability of the statements offered. In sum, the record shows that the Planning Commission followed appropriate procedures which were consistent with all relevant statutes and that it did not violate the petitioners' due process rights. Thus, the trial court was correct to find that the Commission's actions were supported by material evidence, and were not illegal, fraudulent or arbitrary. We accordingly affirm the trial court.

**IV.**

The judgment of the trial court is affirmed. We remand this case to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellants.

_____
PATRICIA J. COTTRELL, JUDGE