IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2019 Session

## DAYLE WARD, ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 17-768-I          Claudia Bonnyman, Chancellor**

_____

### No. M2018-00633-COA-R3-CV
_____

In this certiorari review of a decision of the Board of Zoning Appeals of the Metropolitan Government of Nashville and Davidson County, the Appellants challenge the Board's grant, as authorized by ordinance and state and federal law, of an accommodation from the zoning requirements applicable to property owned by a church, on which it sought to build 22 micro-homes to house the homeless. Appellants argue that the development should be subject to the zoning laws and procedures because the development would be constructed, owned, and operated by a lessee of the property that was not a religious institution or assembly or otherwise exercising religion and, consequently, applying the zoning laws to the development would not adversely affect the church's exercise of religion. The Appellants also argue that the project did not meet the standards for the accommodation set by the state and federal laws. The trial court upheld the decision of the Board. Upon our review, we conclude that material evidence supports the Board's decision and that the decision is not contrary to law, and is not arbitrary or capricious; accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

L. Marshall Albritton, Nashville, Tennessee, for the appellants, Bobbie Bradford, Dayle Ward, Steve McMillan, Andrew Barrett, Virginia Bradshaw, Alice Cammuse, Jean Delffs, Rick Harris, Jill Fagan, Kenneth Fox, Brenda Photivihok, Robert Stapleton, Jessica Marie Van Dyke, Sherry Diane McCall, and Irene Kelley.

Jon Cooper, Director of Law, Lora Barkenbus Fox, and Catherine J. Pham, Nashville, Tennessee, for the Metropolitan Government of Nashville and Davidson County, Tennessee.

Lisa M. Carson, Franklin, Tennessee; and George A. Dean, Nashville, Tennessee, for the appellees, Glencliff United Methodist Church, Inc., Bishop William McAlilly, and Tennessee Conference of the United Methodist Church.

**OPINION**

**I. FACTUAL AND PROCEDURAL HISTORY**

Glencliff United Methodist Church ("GUMC"), is located on a 5.97 acre parcel of land on Glencliff Road in Nashville; it is bordered by Interstate 24 and Thompson Lane, and is currently zoned RS 10 (residential single-family with a 10,000 square-foot minimum lot size). The church sought to use a part of its property to construct a project called "The Glencliff Urban Village," which would consist of 22 "micro-homes" for homeless persons; 19 of the homes would be 200 square feet each and 3 would be 400 square feet. On December 30, 2016, the Church's senior pastor and its head trustee sent a letter to the Metro Zoning Administrator requesting a "reasonable accommodation"[1] pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[2] to use the property in that manner; the accommodation sought would have relieved the project from complying with the regular requirements for property zoned RS 10. The letter stated, in part:

> For years, Open Table Nashville (OTN) in partnership with other homeless and affordable housing advocacy organizations has been considering the needs of our homeless community and trying to envision a means for providing a high quality bridge housing solution for the most vulnerable in our community. Given the need, GUMC has identified property on our campus that is minimally used and that we believe is suitable for a project we are calling The Glencliff Urban Village. This project would involve the construction of code-compliant micro-homes that

---

[1] Section 17.40.010 (H) of the Metropolitan Code, provides that Title 17 of the Code, governing zoning, "shall in every instance be construed, applied and enforced in a manner consistent with applicable federal law, including . . . RLUIPA" and that "the zoning administrator shall make reasonable accommodations in the provisions of this chapter and the rules, policies and practices of [the] office so that rights established or recognized under RLUIPA are protected." The term "reasonable accommodation" is used herein in accordance with the ordinance.

[2] The Religious Land Use and Institutionalized Persons Act is codified at 42 United States Code section 2000cc.

2

would house participants in a program moving them toward permanent housing. Given the church's mission, we believe this project is zoning compliant under the Religious Land Use and Institutionalized Persons Act (RLUIPA), and this letter is intended to document how this project is consistent with the mission of our organization.

GUMC is a congregation of The United Methodist Church, an organization that clearly believes that part of our calling is to help others as they have need . . . The call to love our neighbors is at the core of our beliefs as United Methodists, and since the formation of our movement, that call has been fleshed out in tangible ways.

At a congregational level, GUMC has recognized our location in a high poverty community, and has recognized that our calling and mission must involve engagement with the needs of our neighborhood.

The call to help our friends experiencing homelessness mo[v]e toward physical, emotional, and spiritual wholeness leads us to believe that the establishment of the Glencliff Urban Village is part of the core mission of the UMC, and as such is why we believe that the use of our property at 2901 Glencliff Rd falls under the provision of RLUIPA allowing for this project.

Based upon that letter, the Zoning Administrator of the Metropolitan Government of Nashville and Davidson County ("Metro") issued a letter on January 17, 2017, granting the Church's request for an accommodation, pursuant to RLUIPA and the Tennessee Religious Freedom Restoration Act (TRFRA), Tennessee Code Annotated section 4-1-407, on the basis that "[p]roviding transitional housing is one method of serving [the Church's] religious mission." This decision permitted the Church to use a portion of its property "for transitional housing in the form of code-compliant micro-homes."

Mike Freeman, a member of the Metropolitan Council, appealed the Planning Administrator's decision to the Metropolitan Board of Zoning Appeals ("the Board"). A hearing was held on May 18, 2017, at which a lease between the Church and Open Table Nashville ("Open Table"), a nonprofit agency that provides outreach services to the homeless population and rents office space from the Church, was introduced into the record; the lease provided that Open Table would construct and own the homes. The administrative record also contains numerous letters supporting and opposing the project; petitions containing the signatures of neighbors who opposed the project; a concept plan for the project; a letter from Bishop McAlilly, the Resident Bishop for the Nashville Episcopal Area of the United Methodist Church; Resolution 3261 from the General Board of Church & Society of the United Methodist Church, titled "Homelessness in the

United States"; and excerpts from the annual journals of the Tennessee Conference from years 2012-2016 recognizing Open Table Nashville as an "Advance Special."[3]

After hearing from those in support of and opposed to the granting of the reasonable accommodation, the Board of Zoning Appeals voted 5-2 to uphold the Zoning Administrator's grant of an accommodation to the Church, as reflected in the January 17 letter; an order to that effect was issued on May 25.

On July 21, 2017, Dayle Ward and fourteen other individuals residing near the Church (collectively, "Petitioners"), whose counsel had participated in the May 18 hearing before the Board expressing their opposition to the grant of the accommodation, filed a Petition for Writ of Certiorari, pursuant to Tennessee Code Annotated sections 27-8-101 *et. seq.* and 27-9-101 *et seq.*,[4] in Davidson County Chancery Court seeking review of the Board's decision to affirm the accommodation granted to the Church. The suit named GUMC, the Tennessee Conference of the United Methodist Church, and Bishop William McAlilly (collectively, "GUMC") and the Board as Respondents. The petition alleged that the decision was illegal, arbitrary, and capricious; specifically, the Petitioners argued:

> 35. The Church's exercise of religion is not impermissibly burdened, impinged, or curtailed, in violation of RLUIPA or TRFRA by requiring Open Table's project, the Village, to be subject to Metro's planning and zoning laws and procedures. The Church will not construct, develop, own, maintain, or operate Open Table's Village, and thus, decisions by Metro, the BZA, and other authorized boards and commissions, and the application of Metro's planning, zoning, and land use laws to Open Table's Village, will not affect the exercise of religion by the Church. The Church may wish

---

[3] An "Advance Special" is explained in the Annual Conference materials as a "designat[ion of] certain ministry projects" that "provide an opportunity for individuals and local churches to be partners in ministry" and must be "presented for approval at every annual conference session." The materials also provide, "Through Conference Advance Special offerings, we can participate in 'second mile' giving to meet the missional needs of persons within the bounds of the Tennessee Conference. 100% of gifts to the Conference Advance go directly to the designated ministry."

[4] On appeal, Petitioners state that they brought suit pursuant Tennessee Code Annotated section 27-9-101 because they are "persons aggrieved by the decision of the Metro Board of Zoning Appeals"; that section provides:

> Anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have the order or judgment reviewed by the courts, where not otherwise specifically provided, in the manner provided by this chapter.

Tenn. Code Ann. § 27-9-101.

to continue leasing its offices or its land to Open Table, and the United Methodists may wish to donate to Open Table, but those actions are not prohibited by Metro's planning and zoning laws.

36. Open Table, as nonprofit organization that has not been shown to be a religious institution or a religious assembly or organized around or promoting a religion, is not exercising religion in the construction, development, ownership, maintenance, or operation of its Village, and thus, neither RLUIPA or TRFRA apply.

The Chancellor held a hearing on February 12, 2018, and entered an order on March 13, holding that that the Board did not exceed its jurisdiction or act fraudulently and affirmed the decision. The court also held that the Petitioners failed to establish that the Board acted without material evidence to support its decision or that such decision was arbitrary or capricious, as well as that Petitioners failed to establish "under the specific facts of this case, that enforcing the neutral residential zoning laws and subdivision regulations against the Church was essential to furthering a compelling governmental interest."

The Petitioners appeal, stating the following issue for our review:

Whether the Davidson County Chancery Court erred in affirming the decision of the Metropolitan Government of Nashville and Davidson County, Tennessee, by its Zoning Administrator, as affirmed by the Metro Board of Zoning Appeals, to exempt from compliance with Metro's planning and zoning regulations a 22 micro "tiny" home development to be constructed, maintained, and operated by a nonprofit homeless advocacy organization, in collaboration with other unidentified organizations, on church property on the grounds that the failure to do so would violate the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA") and the Tennessee Religious Freedom Restoration Act, T.C.A. § 4-1-407 ("TRFRA") as a substantial burden on the church's exercise of religion without a compelling governmental interest.

## II. STANDARD OF REVIEW

Our standard of review of decisions of zoning appeals boards was set forth in *Wilson County Youth Emergency Shelter, Inc. v. Wilson County*:

A review of an administrative action is by common law writ of certiorari. *See* T.C.A. § 27-8-101. *See also McCallen* [*v. City of Memphis*], 786 S.W.2d [633] at 639 [(Tenn. 1990)]. "Whether the action by the local governmental body is legislative or administrative in nature, the court

5

should refrain from substituting its judgment for the broad discretionary authority of the local governmental body." *Id.* at 641–42. However, a court should invalidate a decision that is clearly illegal, arbitrary, or capricious. *Id.*

The question of whether there is sufficient evidence to sustain a zoning action is a question of law. *MC Properties, Inc. v. City of Chattanooga,* 994 S.W.2d 132, 134 (Tenn. [Ct.] App. 1999). Hence, appellate review is *de novo* without a presumption of correctness. *Id.*

If there is no evidence to support the zoning action, it is arbitrary. *Sexton v. Anderson County,* 587 S.W.2d 663, 667 (Tenn. [Ct.] App. 1979). In reviewing a zoning action, an appellate court must do so with the recognition that "the discretionary authority of the government body must be exercised within existing standards and guidelines." *McCallen,* 786 S.W.2d at 639.

13 S.W.3d 338, 342 (Tenn. Ct. App. 1999).

Under the certiorari standard, courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); (2) reweigh the evidence, *Watts v. Civil Serv. Bd. for Colum.*, 606 S.W.2d 274, 277 (Tenn. 1980); *Hoover, Inc. v. Metro Bd. of Zoning App.*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); or (3) substitute their judgment for that of the lower tribunal. *421 Corp. v. Metropolitan Gov't of Nashville*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). "[T]he court's primary resolve is to refrain from substituting its judgment for that of the local governmental body." *McCallen*, 786 S.W.2d at 641; *See Capps v. Metro. Gov't of Nashville and Davidson Cty.*, 2008 WL 5427972, at *5 (Tenn. Ct. App. Dec. 31, 2008) ("[i]n recognition of the policy that favors permitting the community decision makers closest to the events to make the decision, the courts refrain from substituting their judgments for the broad discretionary power of the local governmental body").

In this appeal we are also called upon to review the Board's interpretation and application of federal and state statutes. "The standard of review for statutory construction is de novo." *In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014) (citing *State v. Edmondson,* 231 S.W.3d 925, 927 (Tenn. 2007)).

### III. ANALYSIS

No issue is raised with respect to the procedure employed by the Zoning Administrator or the Board of Zoning Appeals, which was pursuant to Title 17 of the

Code of the Metropolitan Government of Nashville and Davidson County, governing zoning matters, specifically section 17.40.010(H) and (I). Instead, it is the Board's construction and application of RLUIPA and TRFRA – laws pertaining to the exercise of religion – that Petitioners challenge. In this regard, we note that Petitioners do not claim the protection or denial of rights secured by the statutes for themselves; indeed, the church, which invoked the benefit of the statutes, and the Board, which applied the statutes to the church's project, are in agreement that compliance with the RS 10 zoning regulations would constitute a substantial burden on the church's exercise of its religious mission, within the meaning of the statutes.[5] Consequently, in the context of this proceeding, Petitioners bear the burden of showing that the Board's decision followed an unlawful procedure, that the Board acted illegally, arbitrarily, fraudulently, or without material evidence in making its decision. *Petition of Gant*, 937 S.W.2d 842, 844-45 (Tenn. 1996) (quoting *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990)); *Fallin v. Knox County Bd. of Com'rs*, 656 S.W.2d 338, 342-43 (Tenn. 1983)

RLUIPA, codified at 42 United States Code §2000cc, provides:

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
(A) is in furtherance of a compelling governmental interest; and
(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc(a)(1). Pertinent to the facts of this case, the Act also defines "religious exercise" as follows: "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose. 42 U.S.C.A. § 2000cc-5(7)(B).

The Tennessee Religious Freedom Restoration Act is similar to the language of RLUIPA, but goes further to define "substantial[ly] burden":

(a) As used in this section, unless the context otherwise requires:
        (1) "Demonstrate" means meets the burdens of going forward with the evidence and of persuasion under the standard of clear and convincing evidence;
        (2) "Exercise of religion" means the exercise of religion under

---

[5] The issue of Petitioners' standing to maintain this action was raised in the trial court, and resolved in Petitioners' favor; their standing is not an issue on appeal.

article I, § 3 of the Constitution of Tennessee[6] and the first amendment to the United States Constitution;

\*\*\*

(7) "Substantially burden" means to inhibit or curtail religiously motivated practice.

(b) Except as provided in subsection (c), no government entity shall substantially burden a person's free exercise of religion even if the burden results from a rule of general applicability.

(c) No government entity shall substantially burden a person's free exercise of religion unless it demonstrates that application of the burden to the person is:

(1) Essential to further a compelling governmental interest; and

(2) The least restrictive means of furthering that compelling governmental interest.

Tenn. Code Ann. § 4-1-407.

Review of claims asserting a violation of TRFRA are conducted "on a case-by-case basis." *Christ Church Pentecostal v. Tennessee State Bd. of Equalization*, 428 S.W.3d 800, 821 (Tenn. Ct. App. 2013) (citing *Johnson v. Levy,* No. M2009-02596-COA-R3-CV, 2010 WL 119288, at \*2 (Tenn. Ct. App. Jan. 14, 2010)). As we construe the statutes, we are mindful that our primary function is to carry out legislative intent without broadening the statute beyond its intended scope. *In re Baby*, 447 S.W.3d at 817 (*citing Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 678 (Tenn. 2002)).

## A. Exercise of Religious Practice

At the Board hearing, counsel for Petitioners conceded that serving the homeless is "central to the mission of this church" but contended that Open Table, rather than the church, was the entity actually providing services to the homeless; consequently, Petitioners argued that Open Table should have been the party seeking the accommodation. On appeal, Petitioners assert that, because Open Table is an "interfaith"

---

[6] Article I, section 3 of the Tennessee Constitution is titled "Freedom of Worship" and reads:

> That all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; that no man can of right be compelled to attend, erect, or support any place of worship, or to maintain any minister against his consent; that no human authority can, in any case whatever, control or interfere with the rights of conscience; and that no preference shall ever be given, by law, to any religious establishment or mode of worship.

Tenn. Const. art. I, § 3.

organization and the record "does not show that Open Table exercises religion by providing services to the homeless," the church may not "transfer" its religious exercise to a third party tenant such as Open Table.

The evidence and testimony at the hearing established that Open Table is an interfaith organization led by a Methodist pastor, supported financially by the United Methodist Church's Tennessee Conference as an Advance Special, and housed at GUMC. Open Table's leader, Rev. Ingrid McIntyre, stated that she "fe[lt] like it was my calling to serve people on the streets, to serve people who have been marginalized"; that Open Table does "a lot of mercy ministries"; when asked by members of the Board whether Open Table had a religious affiliation, she responded:

> MEMBER KING: So is Open Table a religious affiliation?
> MS. McINTYRE: Our statement is that we are a nonprofit interfaith community that disrupts cycles of poverty, journeys with the marginalized, and provides education on issues of homelessness.
> MEMBER TAYLOR: It's interfaith. What does that mean in terms of -- you have a religious aspect to your --
> MS. McINTYRE: **We do.** The reason it's interfaith is because sometimes a lot of our friends on the streets don't feel welcome in places because of their religious beliefs that might be different than other places. And we wanted to make sure that everyone felt like they had a place at the table. Which is why we're called "Open Table," because we want everyone to be cared for and loved no matter where they are in their journey.

(Emphasis added.) Additionally, Lindsey Krinks, who identified herself as a "minister chaplain" and one of the co-founders of Open Table, stated:

> One of the reasons that we started Open Table Nashville was because a lot of us were driven by our faith to provide housing for people without housing. And it's been a dream of ours to do a tiny home village like this since the flood of Tent City, since 2010.
> We've always partnered with churches. We formed Open Table as a religious nonprofit because we're so deeply invested.
> . . . When we founded Open Table four of the five co-founders are ministers. We have two ordained ministers on our staff, one deacon from the Methodist Church, and two chaplains.
> We partner with street chaplaincy programs. So we're really excited about this process.
> We have a lot of expertise in this area. And I hope that you find that we are -- we should be granted this appeal.
> A lot our faith demands that we provide for those who aren't -- and if you look around the city of Nashville right now -- Mr. Ewing, one of the

questions you asked was what has changed; why does Glencliff need to be doing this right now.

When you look at what's going on in the city right now, our affordable housing crisis is huge. We are losing our friends on the street. I'm doing a memorial this week -- another memorial this week for our friends on the streets because there's not enough housing.

So when you ask why the moment is now for something like this, it's because our people are dying and this is an issue of justice. Our religion demands that we do mercy and walk justly. And that's one of the things we think we're living out in this.

So I just wanted to speak from one of the co-founder's positions on this to the religious issue at hand.

These statements show that the work of Open Table is motivated by a religious desire to minister to the needs of marginalized persons generally, and collaborating with GUMC, in the manner of leasing land for the construction and operation of the Glencliff Urban Village, is the practical application of its religious orientation and motivation.

Other evidence in the record in support of GUMC's application includes GUMC's December 30, 2016 letter initiating the request. This letter advised that Open Table was the catalyst for the Glencliff Urban Village project and was "trying to envision a means for providing a high quality bridge housing solution for the most vulnerable in our community"; that the Book of Resolutions of the United Methodist Church stated that "addressing housing needs can and should be a regular part of the work of [United Methodist] congregations," and that the establishment of the project "is part of the core mission of the UMC, and as such is why we believe that the use of our property….falls under the provision of RLUIPA allowing for this project."[7]  The administrative record also includes letters of support from ministers from other churches, as well as members of GUMC explaining the importance of the Urban Village project as a means to embrace a central tenet of their faith — loving and serving the poor by meeting the needs of the homeless in Nashville.  These letters were discussed by representatives of the church and Open Table during the hearing.

Given the nature of the project, the lease arrangement between Open Table and GUMC does not negate the protection that the statutes provide to GUMC; the project is born out of a common, religiously motivated desire to help the homeless, a cause that is recognized by the church as part of its core mission.  Thus, it is entirely appropriate for GUMC to apply for and receive the accommodation allowed by the statutes.  The record

---

[7]  The letter quoted the following language from the United Methodist Book of Resolutions; "…formation of nonprofit and limited-divided housing corporations or housing cooperatives is a viable approach in many situations.  There are excellent opportunities for establishing housing construction, management and advocacy programs."

before the Board, as summarized above, supports the determination that the construction of the Glencliff Urban Village is religiously motivated and constitutes the exercise of religion.

## B. Substantial Burden

As pertinent to the facts of this case, both RLUIPA and TRFRA prohibit the imposition of a law or regulation that substantially burdens the exercise of religion, including zoning regulations. Petitioners argue that no "alleged burden in this case has been shown to be 'substantial.'"

It is clear from the record and the statements made at the Board hearing that GUMC considers this project to be responding to significant, identified housing need in Nashville. In this regard, Ms. Krinks stated:

> When you look at what's going on in the city right now, our affordable housing crisis is huge. We are losing our friends on the street. I'm doing a memorial this week -- another memorial this week for our friends on the streets because there's not enough housing.
> So when you ask why the moment is now for something like this, it's because our people are dying and this is an issue of justice.

She also stated:

> One of the things that we've seen over the last four years in Nashville, and on the national and local level, is that transitional housing is being defunded by the Federal Government in favor of more permanent housing.
> So in Nashville we've actually lost transitional housing beds over the last several years, which creates an even bigger gap. So when people are trying to apply for permanent housing there's not a lot of transitional options because that's been defunded.
> Parks Center, an incredible nonprofit, has lost funding for some of those beds. So we really feel like we're filling a gap that's not being filled right now. We're pointing people toward permanent housing.

Additionally, counsel for the church stated, "[T]his is an incredibly time-sensitive project. Winter will be here before we know it and that is when the individuals who[m] this [project] seeks to serve and Glencliff seeks to serve via this project [are] at greatest risk of passing away on the streets."

Tennessee Code Annotated section 4-1-407(a)(7) defines "substantial burden" as government action that "inhibit[s] or curtail[s] religiously motivated practice." While

11

there are no Tennessee cases that have applied the term to facts similar to those presented here, the statements quoted above show that the project is intended to address an immediate and urgent need for transitional housing that has developed over the last four years. As the Petitioners acknowledge, it would be necessary for the church to modify significantly the Urban Project plan to comply with the existing zoning law or pursue the process for securing a variance from the zoning law; either of these would inhibit the expeditious development of this religiously motivated housing project, thereby constituting a substantial burden within the meaning of the statute.

While RLUIPA does not define "substantial burden," in *Livingston Christian Schools v. Genoa Charter Township*, the Sixth Circuit Court of Appeals announced a test for the courts to apply in making the determination: :

> 1.) "[W]hether the religious institution has a feasible alternative location from which it can carry on its mission;
> 2.) "Whether the religious institution will suffer 'substantial "delay, uncertainty, and expense"' due to the imposition of the regulation"; and
> 3.) Whether "the plaintiff has imposed a burden upon itself."

858 F.3d 996, 1004 (6th Cir. 2017), *cert. denied,* 138 S. Ct. 1696 (2018).

Considering the evidence detailed above in context of the first *Livingston Christian School* factor, Petitioners do not cite evidence showing that the project could be constructed at another church-owned site. The evidence shows that the project will be constructed on a vacant portion of the church's existing 5.97 acre tract and that the current church facilities are not feasible for the project. With respect to the second *Livingston Christian School* factor, as noted above, requiring the project to comply with the RS 10 zoning regulations would delay the project, thereby delaying the response to the urgent need for housing for the homeless; and any required additional improvements would add to its cost. With respect to the third *Livingston Christian School* factor, Petitioners have not asserted that GUMC has imposed any burden upon itself and, under our analysis of the facts of this case, this factor is not implicated.

For the foregoing reasons, the record supports the determination that requiring this project to comply with the RS 10 zoning regulations would constitute a substantial burden on the church's exercise of religion under RLUIPA.

### C. The Government's Interest and Least Restrictive Means of Furthering that Interest

Having held that the evidence supports the determination that subjecting the project to the RS 10 zoning requirements would impose a substantial burden on GUMC's exercise of religion, we proceed to determine whether the evidence supports a

determination that a compelling governmental interest exists as reflected in the RS 10 zoning requirements, and whether those requirements are the least restrictive means of furthering that interest, within the meaning of RLUIPA and TRFRA.

The parties agree that Metro has a compelling interest in using its zoning standards to protect the health, safety, and welfare of the community; neither party argues that the RS 10 requirements do not serve that interest. Petitioners state in their brief that "[t]he only, and least restrictive means, to further that interest is to require that [GUMC's] project comply with applicable planning and zoning requirements." To counter, GUMC argues that Metro has served that interest in the least restrictive manner "[b]y requiring that the micro-homes be built in compliance with all applicable building codes while exempting the church from the burden of a subdivision process that is not necessary based on the specific terms of the propose project." In the unique procedural posture of this case, the Petitioners have the burden of showing that imposing the RS 10 zoning requirements on this project would be the least restrictive means of furthering that interest.[8]

Inherent in the Board's decision to grant the accommodation was its determination that the action was the least restrictive means of furthering the governmental interest. Petitioners do not cite to evidence showing that there was a least restrictive alternative, and we do not discern any such evidence upon our review.

---

[8] RLUIPA defines "demonstrates" to mean: "meets the burdens of going forward with the evidence and of persuasion." 42 U.S.C.A. § 2000cc-5. Federal courts examine these cases under the preponderance standard. *See Al-Azim v. Everett*, No. 3:14CV339, 2017 WL 1097219, at *2 (E.D. Va. Mar. 3, 2017), *report and recommendation adopted,* No. 3:14CV339, 2017 WL 1100436 (E.D. Va. Mar. 22, 2017). However, TRFRA places a higher burden of proof on the government actor. In *Johnson v. Levy,* this Court held that "under Tennessee's religious freedom statute, the governmental agency has to prove by clear and convincing evidence that the action it seeks to take is essential to furthering that compelling governmental interest." *Johnson v. Levy*, No. M2009-02596-COA-R3-CV, 2010 WL 119288, at *7 (Tenn. Ct. App. Jan. 14, 2010) (emphasis added).

## IV. CONCLUSION

In making the determination to grant the accommodation, the Board considered the statements of the parties, proponents, and opponents of the project, and voluminous materials, including religious documents, and supporting and opposing letters; in its interaction with the witnesses and in deliberation, the Board, with the assistance of its counsel, discussed TRFRA and RLUIPA, the challenge of finding housing for the homeless, and the particulars of the proposed project. Upon our review there is nothing in the record that leads us to conclude that the Board acted illegally, arbitrarily, or fraudulently in granting the accommodation in accordance with section 17.40.010 (I) of the Metropolitan Code.

Accordingly, we affirm the judgment of the Chancellor.

 

 

 

_____
RICHARD H. DINKINS, JUDGE

14